GREENE, BROILET & WHEELER LLP
Christine D. Spagnoli (SBN 126353)
cspagnoli@gbwlaw.com
100 Wilshire Blvd, 21st Floor
Santa Monica, CA 90401
Tel:  (310) 340-6505
Fax: (310) 576-1220

NELSON & FRAENKEL, LLP
Gretchen Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
601 So. Figueroa St., Suite 2050
Los Angeles, CA 90017
Tel:  (844) 622-6469
Fax: (213) 622-6019

[Additional Counsel on Signature Page]

*Counsel for Plaintiff & the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET STEVENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BRITAX CHILD SAFETY, INC.,<br><br>Defendant. | Case No.: _____<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>1) Violations of Cal. Civil Code §1750 (CLRA)<br><br>2) Violations of Cal. Bus. & Prof. Code  § 17500 (FAL)<br><br>3) Violations of Cal. Bus. & Prof. Code  § 17200 (UCL)<br><br>4) Cal. Civil Code §§ 1791-1794 (Implied Warranty)<br><br>5) Violations of Various State Consumer    Protection Laws<br><br>6) Unjust Enrichment/Quasi-Contract<br><br>(Jury Trial Demanded on All Causes of Action so Triable) |

Plaintiff Margaret Stevens, individually and on behalf of all others similarly situated ("Class"), brings this Class Action Complaint against Defendant Britax Child Safety, Inc. ("Britax"), upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, as follows.

## **INTRODUCTON**

1.   Britax manufactures and sells defective car seats that it knows will endanger the lives of the children who use them. Plaintiff brings this class action on behalf of purchasers of two similar Britax model combination child seats: the Frontier ClickTight Harness-2-Booster Seat ("Frontier") and the Pioneer Harness-2-Booster Seat ("Pioneer"; together "Class Child Seats").

2.   Both models are forward-facing seats that can either be used with a harness or as a belt-positioning booster seat for bigger kids. They each come equipped with a 5-point harness that incorporates a shoulder belt adjustment system.[1]

 

3.   Substantively similar in form and function, the Pioneer and Frontier suffer from the same dangerous design flaw. During foreseeable conditions of use, including a mere moderate-speed impact, the structure surrounding the harness and the top tether are capable of detaching from the seat due to a failure in the hardware component that

---

[1] https://us.britax.com/frontier-clicktight-forward-facing-only-seats/ (Frontier, on left) & https://us.britax.com/pioneer-forward-facing-only-seats/ (Pioneer, on right) (last visited 6/26/20).

connects the harness to the steel frame. Once this occurs, a child in the seat has *no effective upper torso restraint*, which is a central function of any child seat.

4. Britax learned of this safety defect at least as early as 2015. In March 2019, Consumer Reports tested the Frontier and Pioneer and found that both models failed under real-world conditions: "The harness support hardware at the rear of the seat's shell in the child's shoulder area broke in our tests." And further: "In real-world crashes that are as bad—or worse—as the ones simulated in our tests, these structural failures would increase the risk that a child's head could come into contact with some part of the vehicle's interior, or that the child might even be ejected from the car seat."[2]

5. Despite knowing that the Class Child Seats posed an unreasonably high danger of injury or even death, Britax continued to sell the Class Child Seats and deployed a national marketing campaign in which it hammered in the mantra that Britax's seats, including the Frontier and Pioneer, provide optimal safety, protection, and restraint for children. Such claims are reinforced through the uniform labels on each of the Class Child Seats promising "impact protection." All the while, Britax has not disclosed and has concealed the potentially life-threatening safety defect in the harness support hardware, which is not obvious or easily gauged by a typical purchaser.

6. Plaintiff and members of the Class paid more for the Class Child Seats than they would have paid had they known about the design defect or would not have purchased them at all. Through this suit, Plaintiff seeks to ensure that Britax does not continue to reap economic gain at the expense and safety of unsuspecting consumers, whom Britax has misled and deceived.

## PARTIES

7. Plaintiff Margaret Stevens is and was at all relevant times a citizen and domiciliary of Los Angeles, California. Plaintiff paid $272 plus tax for a new Frontier ClickTight Harness-2-Booster Seat, which was shipped to her on March 4, 2017.

---

[2] Available at https://www.consumerreports.org/toddler-booster-seats/child-car-seats-from-britax-cosco-graco-harmony-break-in-consumer-reports-tests/ (last visited 6/18/20).

8.    Defendant Britax Child Safety, Inc. is a South Carolina for-profit corporation with its principal place of business in Fort Mill, South Carolina. Britax designs, manufactures, markets, and sells a complete line of child seats (along with other products) throughout the United States, including in California, Florida, Illinois, New York, North Carolina and Washington. Its product line of combination child seats includes the Frontier and Pioneer models, which comprise the Class Child Seats.

## JURISDICTION AND VENUE

**Personal Jurisdiction**

9.    This Court has specific personal jurisdiction over Britax because this action arises out of and relates to its contacts with and transactions in this forum.

10.  Britax engages in business within this and judicial district ("District").

11.  Britax directed the Class Child Seats through the stream of commerce into this District.

12.  Britax has marketed and sold its products within the state of California and within this District through sales representatives[3]; through the wires and mails; via big box stores, including Kohl's, Walmart, and Target; and via e-commerce platforms through which residents of this state and District can purchase the Class Child Seats, including amazon.com, buybuybaby.com, and pishposhbaby.com.

13.  As depicted below, Britax's website includes a "Where to Buy" store locator (https://us.britax.com/where-to-buy/), which directs consumers to local Britax retailers based on zip code (indicated by a "Britax" pin on the map):



[3] For example, around January 2020, Defendant advertised on LinkedIn for a Field Service Representative in the "Greater Los Angeles Area."

14.  Britax sells the Class Child Seats to distributors and retailers in this District for the purpose of making them available for purchase here. Additionally, Britax sells car seats and other products directly from its own website and, upon information and belief, ships those products directly to consumers in California.

15.  According to Britax's official Facebook page,[4] Britax also promoted itself and its products in several locations throughout California and within this District by attending trade shows and consumer expositions, including the Big City Moms Biggest Baby Shower (Los Angeles), where "Over 100 of the baby industry's best companies were present to show their latest and greatest gear" and "super-pass" holders were gifted with a Britax baby stroller,[5] and Gearapalooza (Los Angeles), a "national tour which brings the best baby gear and expertise to fifteen cities across the country each year."[6] According to its Facebook page, Britax also attended and promoted its products at MommyCon (Los Angeles, San Jose, San Francisco), BC Basics for Target (Los Angeles), Gearapalooza (San Francisco), Big City Moms Baby Shower (San Francisco), Club MomMe Family Fall Fest (Los Angeles), New Parent Sleep Brunch (San Francisco), the San Diego Prego Expo (San Diego), Rock Your Registry (Santa Clarita, Pleasant Hill), BC Baby Registry 101 (San Francisco), "Parenting & Pregnancy: An Evening With Rosie Pope" (Santa Monica), and the 7th Annual Signature Pregnancy Awareness Month Event in Los Angeles (Santa Monica), among others. Britax's Facebook page includes a "#ShopLocal Series" featuring The Pump Station & Nurtury in Los Angeles.[7]

---

[4] https://m.facebook.com/pg/BritaxUS/events/?ref=page_internal&mt_nav=0 (last visited 6/19/20).

[5] https://www.bigcitymoms.com/past-events/the-33rd-biggest-baby-shower-los-angeles/ (last visited 6/19/20).

[6] https://parental.guidanceguide.com/motherhood/guides/bump-club-beyond-and-gearapalooza-FJx5ZE0Hs (last visited 6/19/20).

[7] https://www.facebook.com/BritaxUS/videos/vb.60227538389/676546436477194/?type=2&theater (last visited 6/26/20)

16. Plaintiff and other Class members suffered injuries and losses in this District, which was foreseeable to Britax.

17. Britax directs consumers to purchase locations in this state and District and directs electronic activity into this state and District with the intent to engage in business interactions, and it has in fact engaged in such interactions for the purpose of selling the Class Child Seats.

**Subject Matter Jurisdiction**

18. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are well in excess of 100 Class members, as defined below; and there are numerous members of the Class, including Plaintiff, who are citizens of a state different from Britax.

**Venue**

19. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

20. Britax caused the Class Child Seats to be offered for sale and sold to the public in this District and Plaintiff incurred her losses in this District. Likewise, many other Class members purchased the Class Child Seats in this District.

21. Venue is proper pursuant to 28 U.S.C. § 1391(c)(2) because Britax is deemed a resident of this District by virtue of this Court's personal jurisdiction over Britax with respect to this civil action.

22. As set forth in the attached declaration, venue in this County is appropriate under Cal. Civ. Code § 1780(c).

## ADDITIONAL FACTUAL ALLEGATIONS

**Britax's Nationwide Marketing Campaign and Uniform Labeling Promise Optimal Safety, Protection, and Restraint**

23. People buy child seats for safety. Britax has sought to capitalize on the preeminence consumers place on safety by deploying a marketing campaign—spanning several years and numerous forms of media—in which it has consistently and uniformly promoted its car seats as providing exceptional safety, restraint, and impact protection. Britax also affixes a logo promising "impact protection," which is prominently displayed on every one of the Class Child Seats. Through all of its promotions, Britax makes no mention of the safety defect that can cause a child to become unrestrained or ejected from the seats during a routine traffic collision.

24. In or around 2013, Britax launched a comprehensive nationwide advertising campaign that highlighted peace of mind and industry-leading safety features. The campaign used a range of tactics that included a national television spot receiving (on information and belief) tens of millions of impressions, online video, digital advertising, social media, and a robust website, which positioned Britax as the industry leader in innovative safety technology.

25. Britax's marketing efforts have been extremely effective, garnering nearly 30 million overall impressions on its website, 500,000 of which are from paid search advertisements alone. Britax also uses "microsites" along with other online marketing strategies that promote the features and safety benefits of the Class Child Seats and drive purchases to a "Where to Buy" page. And, it distributes emails containing targeted e-newsletters to parents of prenatal to toddlers, through which it promotes the Class Child Seats and their safety. In short, since at least 2013, Britax's ubiquitous promotional campaign touting the extraordinary safety of its child seats has left no stone unturned.

26. Below are mere examples of Britax's uniform, widespread advertising that focuses on the Class Child Seats' safety attributes and their supposed exceptional ability to protect and restrain children during a collision.

27.  Britax's safety claims begin with the company's very name—Britax Child Safety, Inc.—and the homepage of its website, which promotes "Safety You Can Trust."[8] Britax also states on its website that Britax car seats are "brought to you by the #1 brand in safety technology."[9]



28.  The Class Child Seats themselves are labeled with a tag boasting of Britax's proprietary "safecell impact protection,"[10] a feature also touted on Britax's website, under the heading "Safety, Comfort & Convenience."



---

[8] https://us.britax.com/ (last visited 6/25/20).

[9] https://us.britax.com/all-products/ (last visited 6/25/20) (yellow underline added for emphasis).

[10] Frontier: https://us.britax.com/frontier-clicktight-forward-facing-only-seats/ (left) (last visited 6/25/20) & Pioneer: https://www.amazon.com/Britax-Pioneer-Combination-Harness-2-Booster-Domino/dp/B00OTXUNTC (right) (last visited 6/26/20).

29. Britax claims its SafeCell Impact Protection will "protect your child *well beyond the federal safety standards*,[11] while stating that, "as *the leader in safety technology*, only Britax Car Seats have SafeCell impact protection." Britax states, "we feel that 'safe enough' simply isn't good enough for your child. . . SafeCell's innovative technologies combine to provide exceptional energy absorption and ***movement limitation*** in a collision, keeping your child safe and you free from worry along the way."[12]

30. Britax thus not only touts safety as a key feature of its seats—not surprising from a car seat manufacturer—but it distinguishes itself from its competition by purporting to be a "leader" in safety and to offer child seats that exceed federal safety standards with safety and restraint features available "only" to Britax customers.

31. Britax's website says, "Safety, comfort and convenience make the Frontier ClickTight an exceptional Harness-2-Booster Seat. . . . SafeCell Impact Protection surrounds your child in advanced layers of protection that absorb crash forces to keep your little one safe."[13] Similarly, for the Pioneer, Britax claims, "SafeCell Impact Protection surrounds your little one in advanced layers of safety. Side Impact Protection helps absorb crash forces . . . ."[14] The webpages for both the Pioneer and Frontier seats feature a "Superior Protection" tab with safety information, including identical "Shield Your Child"[15] claims:

---

[11] https://us.britax.com/articles/product-knowledge/safecell-impact-protection/ convertible -car-seats/ (last visited 6/25/20) (emphasis added).

[12] https://us.britax.com/product-knowledge/articles/safecell-impact-protection-convertibles/ (last visited 6/25/20) (emphasis added).

[13] https://us.britax.com/frontier-clicktight-forward-facing-only-seats/ (last visited 6/26/20).

[14] https://us.britax.com/pioneer-forward-facing-only-seats/ (last visited 6/26/20).

[15] *Id.* (Pioneer) & https://us.britax.com/frontier-clicktight-forward-facing-only-seats/ (Frontier) (last visited 6/26/20).

**SHIELD YOUR CHILD**

2 Layers of Side Impact Protection

Help keep your child safe during a collision with an energy-absorbing shell and foam-lined head rest.

32.  The webpages for both seats also feature, under the "Superior Protection" tab, identical safety information regarding the "SafeCell Impact Absorbing Base," and the "Impact-Stabilizing Steel Frame"[16]:

**PROACTIVE PROTECTION**

SafeCell Impact-Absorbing Base

Compresses to reduce the force of a collision, diverting energy away from your child.

**STRONG, STABLE & SECURE**

Impact-Stabilizing Steel Frame

offers superior strength where you need it most: at the connection point to the vehicle.

33.  Britax's homepage includes a link to Consumer Reports' car seat rating, which shows that Consumer Reports rated its Boulevard model #1 among car seats as of March 2020. But the website does not mention that Britax has known, since at least 2015 that the Class Car Seats were prone to catastrophic failure in real-world conditions.[17] It also omits any mention of the fact that the Class Car Seats failed Consumer Reports' crash testing.

34.  Under "Safety & Testing Standards," the Britax website boasts of the company's "significant investments in advanced technology research and development,"

claiming, "We never stop working to improve our products and technologies." Below that, Britax lists its "Proudest Safety Innovations," which include the SafeCell Technology featured in the Class Child Seats. The same page includes a seal declaring the Class Child Seats are "Safety Made in the USA," noting, "We also test our products in our own crash-test facilities and through independent parties." Again, Britax makes no mention here, or anywhere else, of the safety defect.[18]

35. Britax's official Amazon page repeatedly touts the exceptional safety of its products, consistent with the labeling and advertising described above. For example, it features a large banner ad showing the Britax logo and the slogan "Protecting Dreams Since 1966." Immediately below the slogan is an image of a parent and infant, with a highly emotive safety pitch: "We don't just make car seats. We make parents more confident. And kids more comfortable. We make safe safer. We make birthdays keep coming. So kids grow up. Because we hold the future. And we hold them tight. Just like you do."[19] Below that is the same "Safety Made in the USA" seal found on Britax's website accompanied by the statement that "Britax has revolutionized the child passenger safety industry since 1966." Other copy on the page include "Britax Safe from birth to big kid" and "Our car seats are designed to keep them safe, so you can savor every second of the journey."[20] The Harness-2-Booster page claims the seats "Protect your growing child with a five-point harness," which was part of the failure mode for the Class Car Seats.[21]

---

[16] *Id.*

[17] https://us.britax.com/ & http://reprints.theygsgroup.com/cr/reprints/ C106285_Britax _final.pdf (last visited 6/25/20).

[18] https://us.britax.com/why-britax/safety-standards/ (last visited 6/26/20).

[19] https://www.amazon.com/stores/BRITAX/BRITAX/page/86A0A471-14D0-4958-9EEB-ADAD0EBF5877 (last visited 6/26/20)

[20] https://www.amazon.com/stores/BRITAX/BRITAX/page/86A0A471-14D0-4958-9EEB-ADAD0EBF5877 (last visited 6/26/20) (emphasis added).

[21] https://www.amazon.com/stores/page/3CBACF93-17CB-45AF-9300-12D076E7F89A ?ingress=0&visitId=2cd81460-e55c-4d35-a8b8-7b73ca24db7d (last visited 6/26/20).

36. Maintaining the consistent theme, Britax's official Facebook page focuses on the company's primary selling point of exceptional safety and protection, and it includes hashtags like #ProtectingYourDreams, #ShareSafety, and #BritaxSafety.[22] The Facebook page has more than 725,000 "likes."

37. The company's "Britax Child Safety" feed on Instagram (which is linked via the Britax Facebook page) features the same hashtags and is replete with safety-related imagery and text like "SAFETY When It Matters Most," "Safe Travels," "Don't Rush SAFETY." In February 2020, Britax touted on Instagram that Consumer Reports had rated certain of its car seat models favorably, stating: "We're very proud to share how our ClickTight convertible car seats ranked against the competition." Britax's Instagram post on Consumer Reports' favorable ratings omits any mention of the Class Child Seats' dangerous safety defect and failed crash tests.[23]

**The Defect in the Class Car Seats Poses an Unreasonable Safety Risk**

38. As alleged above, the Class Car Seats each have the same dangerous design defect. During normal and foreseeable conditions of use, including mere moderate-speed impacts, the structure surrounding the harness of the Class Child Seats and the top tether are capable of detaching from the seat due to a failure in the hardware component that attaches the harness to the steel frame, at which point a child has no effective upper torso

---

[22] https://www.facebook.com/BritaxUS/ (last visited 6/26/20).

[23] https://www.instagram.com/britaxus/ (last visited 6/26/20).

restraint, the provision of which is a central function of any car seat. Britax learned of this safety defect at least as early as 2015, when it was notified that one of its other similar models, which has the same defective parts and configuration as the Class Child Seats, exhibited the such failure mode during testing.

39.  In March 2019, Consumer Reports—an independent, nonprofit consumer organization that performs and reports the results of unbiased product testing—subjected the Frontier and Pioneer car seats to crash testing designed to simulate real-world crash conditions. Consumer Reports reported that the Class Child Seats failed its testing: "[t]he harness support hardware at the rear of the seat's shell in the child's shoulder area broke in our tests. . . .  [T]he structural damage was severe enough that the harness 'pulled through' the seat completely, allowing the harness to loosen . . . ."[24] A video accompanying the report depicts the mode of damage to the seats:



40.  According to Consumer Reports, Britax and other companies with failing seats "reiterated the safety of their seats and noted that they meet federal standards and that CR's testing differed from the government's." On the other hand, Britax has acknowledged in the context of an unrelated recall that "A loose harness may not

_____

[24] https://www.consumerreports.org/toddler-booster-seats/child-car-seats-from-britax-cosco-graco-harmony-break-in-consumer-reports-tests/ (last visited 6/26/20).

adequately protect a child in the event of a motor vehicle crash,"[25] which is the very issue that can arise as a result of the defect in the Class Child Seats.

**Britax Conceals, Suppresses and Makes Misleading Representations About the Nature of the Defect**

41. While promoting the Class Child Seats as safe and trading on its reputations as a maker of safe and reliable car seats, Britax failed to disclose and, on information and belief, purposefully and actively concealed the existence and nature of the Class Child Seats' safety defect. Class Child Seats do not, as Britax claims in its advertising and promotions, offer exceptional safety, restraint, and impact protection. They instead contain a hidden defect known to Britax but not apparent to its consumers, including Plaintiff and the Class.

42. On information and belief, Britax, and its executives and managing agents, knew of the nature and scope of the defect as least as early as 2015 – prior to marketing and selling the Class Child Seats throughout the United States.

43. Despite such knowledge, Britax failed to disclose the defect and instead touted the safety, restraint capabilities, and impact protection of the Class Child Seats to consumers, including Plaintiff and the Class.

44. Plaintiff and the Class expected the Class Child Seats to be free of defect. Throughout the Class period, Britax had exclusive or superior knowledge of the defect, which was not readily apparent, and there is no or only limited publicly available information about the defect.

45. Britax thus led consumers to be deceived by: (1) its affirmative misrepresentations; (2) its failure to disclose material facts about the defect of which it had exclusive or superior knowledge; (3) its concealment regarding the nature of defect; and (4) its partial representations about the safety, restraint, and impact protection that is misleading because the nature of the safety defect has not been disclosed. Britax

---

[25] https://us.britax.com/service-support/britax-clicktight-convertible-recall-faqs/ (last visited 6/26/20).

knowingly and intentionally failed to comply with its duty to disclose the safety defect and make true and non-misleading statements about the Class Child Seats.

46. Had Britax disclosed the safety defect, Plaintiff and members of the Class would have been aware of such disclosures. This is particularly true given that Britax conducted a systematic, multi-year national marketing campaign, and made representations about impact protection on the uniform labeling of the Class Child Seats themselves. Plaintiff and the Class relied upon the above-described false statements and material omissions in deciding to purchase the Class Child Seats.

47. On information and belief, Britax intended for consumers to rely upon its representations and material omissions concerning the exceptional safety, restraint, and impact protection supposedly afforded by the Class Child Seats.

**Plaintiff's Purchasing Experience and Economic Injury**

48. Prior to purchasing the Frontier (pictured below), Plaintiff was familiar with Britax's claims of exceptional safety.



49. Plaintiff paid $272 plus tax for a new Frontier, which was shipped to her in Los Angeles, California on March 4, 2017. She purchased the Frontier, without knowledge of any defect, on Amazon. Like the other Class members, Plaintiff became familiar with

Britax's claims related to safety and protection (as outlined above), which Plaintiff was exposed to before her purchase. Prior to purchasing the Frontier, Plaintiff also saw the label advertising safety. While shopping for the new child seat, the seat's overall safety was her chief concern.

50. Because the existence of the defect in the Class Child Seats is such obviously material information to any reasonable consumer, had it been honestly disclosed prior to the purchase, Plaintiff and other Class members would not have purchased the Class Child Seats and/or would not have paid as much for them. Furthermore, Plaintiff and the Class received a product of different and substantially lesser value – one with a higher effective cost. Stated differently, Plaintiff and the Class surrendered more and acquired less in their transactions than they would have if Britax had told the truth about the Class Child Seats. Accordingly, Plaintiff and the Class did not realize the benefit of the bargain in purchasing the Class Child Seats, and their expectations were not met. Furthermore, Plaintiff suffered loss of the use and usefulness of the car seat because once she was alerted to the seat's potential for failure, she stopped using the seat.

**Tolling and Estoppel**

51. For the reasons alleged herein, neither Plaintiff nor members of the Class know or could have discovered through the exercise of reasonable diligence that her Child Car Seats were defective within the time period of any applicable statutes of limitations. Based on the foregoing, Britax is estopped from relying on any statutes of limitations in defense of this action.

<u>**CLASS ACTION ALLEGATIONS**</u>

52. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and the following Classes:

**The California Class:** All residents of California who purchased for personal or household use a new Frontier ClickTight Harness-2-Booster Seat or Pioneer Harness-2-Booster Seat, from four years prior to the filing of this Complaint up to and including the date that notice is given to the Class.

**The Multistate Class:** All residents of Florida, Illinois, New York, North Carolina and Washington who purchased for personal or household use a new Frontier ClickTight Harness-2-Booster Seat or Pioneer Harness-2-Booster Seat.

53. Unless otherwise stated, the term "Class" refers jointly and severally to the California and Multistate Classes.

54. Excluded from the Class are: (a) Britax and its board members, executive-level officers, attorneys, and immediate family members of any such persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; (d) any person who purchased a Class Child Seat that caused an injury or death; and (e) any person who timely and properly excludes himself or herself from the Class.

55. Plaintiff may alter the Class definitions as necessary at any time to the full extent permitted by applicable law.

**Numerosity—FRCP 23(a)(1).**

56. The members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

57. Although the precise number of Class members is unknown to Plaintiff, upon information and belief the Class would easily number in the thousands. According to Dun & Bradstreet, Britax generates more than $36 million in annual revenue and car seats are one of its leading products.[26] Both the Frontier and the Pioneer car seats have been on the market since at least 2013,[27] and both are or were sold nationally. The Class is thus comprised of thousands of geographically dispersed members who cannot be practicably joined.

58. The true size of the Class is readily ascertainable through Britax's business records and other means.

---

[26] https://www.dnb.com/business-directory/company-profiles.britax_child_safety_inc_afd8d4c40163bb5d56c25490fcc6dff7.html

[27] https://us.britax.com/service-support/instructional-videos-and-user-manuals/ (providing downloads to user manuals dated 2013 for both the Frontier ClickTight and the Pioneer).

**Commonality—FRCP 23(a)(2).**

59. This action involves questions of law and fact common to the Class, including:

    a.   whether the Class Child Seats contain a hidden safety hazard relating potential detachment of the harness or top tether during normal conditions of use;

    b.   what Britax knew about the safety hazard and when Britax learned of it, including whether and when Britax knew or should have known that the Class Child Seats were not as safe as Britax represented them to be and, if so, how Britax acquired such knowledge;

    c.   how and what Britax told Class members about the safety of the Class Child Seats through marketing and labeling of the Class Child Seats, including whether Britax concealed the Class Child Seats' safety hazards from the Class;

    d.   the materiality to reasonable consumers of Britax's representations and omissions;

    e.   whether Britax's misconduct was knowing and willful;

    f.   whether Britax's acts and omissions give rise to liability under the various state laws asserted as the basis for this Complaint, or others;

    g.   whether the Class Child Seats' value was commensurate to the amount of money Plaintiff and the Class paid to Britax and, if not, the difference between the Class Child Seats' actual value and the amount of money Plaintiff and the Class paid for the Class Child Seats;

    h.   whether Britax was unjustly enriched by receiving Class members' money in exchange for the Class Child Seats;

    i.   whether Britax should be ordered to disgorge all or part of the monies it received from Class members in exchange for the Class Child Seats;

    j.   whether Plaintiff and the Class are entitled to damages, injunctive relief, restitution, or other relief sought in this Complaint; and

k.   the amount to which Plaintiff and the Class are entitled.

60. These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class members' claims.

**Predominance.**

61. The factual and legal issues identified above (a) are common to the Class, (b) arise from a common course of conduct by Britax, (c) predominate in number and importance over questions that may not be common to the Class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

**Typicality—FRCP 23(a)(3).**

62. Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the Class members paid for one or more of the Class Child Seats but received less than the full value of the Class Child Seats due to Britax's misrepresentations and/or omissions. Class members, like Plaintiff, would not have purchased the Class Child Seats or paid as much had Britax not misrepresented the safety of the Class Child Seats and concealed and omitted to disclose the Class Child Seats' material safety hazards unknown to Plaintiff and Class members alike.

63. Plaintiff and Class members were all exposed to the same standard misrepresentations and omissions.

64. Plaintiff and each Class member suffered damages or lost money or property. Damages that are calculable on a class-wide basis; the claims all arise from a single course of conduct by Britax; and each Class member would individually make similar legal and factual arguments to establish Britax's liability.

65. There are no defenses available that are unique to the Plaintiff.

**Prerequisites: Adequacy of Representation—FRCP 23(a)(4).**

66. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members.

67. Plaintiff has retained counsel competent and experienced in complex litigation, including class actions, and she intends to prosecute this action vigorously on behalf of the Class. Plaintiff's counsel have ample resources to do so.

68. Plaintiff has no interests that are antagonistic to those of the Class and she will fairly and adequately protect the proposed Class members' rights, as will counsel.

**Superiority—FRCP23(b)(3).**

69. A class action is a superior means to ensure the fair and efficient adjudication of this case.

70. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Britax so that making the class whole in the absence of a class action is unlikely and impracticable.

71. Class members have relatively less interest in individually controlling the prosecution of separate actions and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action.

72. Britax has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Britax than defending against all potential claims in a single forum and proceeding.

73. The judicial system has no interest in burdening a number of courts when the claims of this highly cohesive Class can be fairly and efficiently concentrated and managed by this Court. Finally, individual actions would increase the delay and expense to all parties involved and to the courts. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

74. Further, without class certification, the prosecution of separate actions by individuals would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Britax, as it has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or

corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

**Particular Issues—FRCP 23(c)(4).**

75. Any or all of the issues identified in ¶ 80(a)-(k) are appropriate for certification pursuant to Fed. R. Civ. P. 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests.

76. Certification of particular issues would move the litigation forward efficiently, saving money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

77. For the reasons set forth above, these issues predominate in number and importance over questions that may not be common to the Class. Further, as to the California Class, a class action should further be certified under California Consumer Legal Remedies Act, Cal. Civ. Code § 1781.

## CLAIMS FOR RELIEF

**COUNT I: Violations of California's Consumers Legal Remedies Act (Cal. Civil Code § 1750, *et seq.*) on Behalf of the California Class**

78. Plaintiff realleges and incorporates by reference ¶¶ 1-5, 7-49, 51-59(a)-(f), 60-62, 64-77 above, except for any allegation related to damages, which Plaintiff excludes from this claim at this time.

79. This claim is brought on behalf of the California Class (referred to throughout this Count as the "Class").

80. The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

81. Plaintiff and the Class members are "consumers" as defined in California Civil Code § 1761(d).

82. The Class Child Seats are "goods" as defined in California Civil Code § 1761(a).

83. Britax is a "person" as defined in California Civil Code § 1761(c).

84. Plaintiff's and the Class members' purchases of the Class Child Seats are "transactions" as defined in California Civil Code § 1761(e).

85. Britax's representations and omissions concerning the safety and the overall quality of the Class Child Seats were false and/or misleading as alleged throughout this Complaint.

86. Britax's false or misleading representations and omissions were made to the entire Class and were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

87. Britax knew or should have known its representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

88. Britax's practices, acts, and course of conduct in marketing and selling the Class Child Seats were and are likely to mislead reasonable consumers acting reasonably under the circumstances to their detriment and in fact consumers were misled.

89. Britax's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Class Child Seats for personal, family, or household purposes by Plaintiff and the Class, which violated and continues to violate the following sections of the CLRA:

    a. § 1770(a)(5): representing that goods have characteristics, uses, benefits, or quantities that they do not have;

    b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

90. Britax profited from the sale to unwary customers of the falsely, deceptively, and unlawfully advertised and labeled Class Child Seats.

91.  Britax's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

92.  Britax's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class member.

93.  Plaintiff sent notice to Britax pursuant to Cal. Civ. Code § 1782(a), but the 30-day response period has not elapsed; thus, Plaintiff seeks no damages pursuant to this Count, but will amend this Complaint at the appropriate time to claim damages.

94.  Pursuant to California Civil Code § 1780, Plaintiff seek injunctive relief requiring Britax to cease and desist from any continued misrepresentations and to notify consumers of the safety hazards and any further injunctive or equitable relief the Court deems proper.

## COUNT II: Violations of California's False Advertising Law
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) on Behalf of the California Class

95.  Plaintiff realleges and incorporates by reference ¶¶ 1-77 above.

96.  This claim is brought on behalf of the California Class (referred to throughout this Count as "the Class.")

97.  The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

98.  It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

99.  As alleged herein, Britax's advertisements, labeling, policies, acts, and practices relating to the Class Child Seats were and are deceptive and misleading.

100.  As alleged herein, Britax's advertisements, labeling, acts, and practices misled consumers acting reasonably—including Plaintiff and the Class members—about

the safety and quality of the Class Child Seats.

101.    Plaintiff and the Class suffered an injury-in-fact as a result of Britax's actions as set forth herein because, as reasonable consumers, they purchased the Class Child Seats in reliance on Britax's false and misleading advertising and labeling claims and omissions concerning the Class Child Seats' safety and quality.

102.    Britax's business practices as alleged herein constitute false advertising under the FAL because Britax has advertised the Class Child Seats in a manner that is deceptive, untrue, and misleading, which Britax knew or reasonably should have known, and because Britax omitted material safety information from its advertising and labeling.

103.    Britax profited from sale of the falsely and deceptively advertised Class Child Seats to reasonable but unwary consumers including Plaintiff and the Class, and Britax has thereby been unjustly enriched.

104.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Britax was unjustly enriched.

105.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks (a) any order or judgment necessary to restore to Plaintiff and the Class any money Britax may have acquired through violation of the FAL; (b) imposition of civil penalties; and (c) injunctive relief requiring Britax to cease and desist from any continued false advertising or other misconduct that is likely to reoccur and to notify consumers of the safety hazards, as well as any further injunctive or equitable relief the Court deems proper.

### COUNT III: Violations of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) on Behalf of the California Class

106.    Plaintiff realleges and incorporates by reference ¶¶ 1-77 above.

107.    This claim is brought on behalf of the California Class (referred to throughout this Count as "the Class.")

108.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

109.   Britax's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

110.   Britax's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the safety and quality of the Class Child Seats.

111.   **Unlawful**: The acts alleged herein are "unlawful" under the UCL in that they violate at least (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and the (b) Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

112.   **Unfair**: The acts alleged herein are "unfair" because Britax's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to their victims, including Plaintiff and the Class.

113.   The acts alleged herein also are unfair because they violate public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

114.   The acts alleged herein are unfair because the consumer injury was substantial, was not outweighed by benefits to consumers or competition, and was not one that consumers could reasonably have avoided, given the latency of the safety hazard at issue and Britax's concealment of it.

115.   Reasonable consumers, including Plaintiff and the Class, purchased the Class Child Seats believing they were beneficial and effective as claimed by Britax when in fact they were not—a fact of which consumers could not reasonably have become aware.

116.   **Fraudulent**: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

117.   The acts alleged herein, including Britax's representations and omissions about the safety and quality of the Class Child Seats, are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Britax's representations and omissions.

118.   Britax profited from its sale of the falsely, deceptively, and unlawfully advertised and labeled/packaged Class Child Seats to unwary consumers.

119.   Britax's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and Class members.

120.   Plaintiff and the Class have suffered injury-in-fact as a result of Britax's conduct, including but not limited to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Britax was unjustly enriched.

121.   Plaintiff and the Class members are likely to continue to be damaged by Britax's deceptive trade practices, because Britax continues to disseminate misleading and false information on the Class Child Seats' packaging and through the marketing and advertising of the Class Child Seats, and because Britax continues to conceal from Plaintiff, the Class, and the public, its knowledge of the safety hazards inherent in the Class Child Seats. Thus, injunctive relief is appropriate.

122.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Britax from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and requiring Britax to commence a corrective advertising campaign and/or to otherwise notify the public of the safety hazards inherent in the Class Child Seats.

123.   Plaintiff and the Class seek restitution of all monies from the sale of the Class Child Seats, which were unjustly acquired through unlawful competition.

**COUNT IV: Breach of the Implied Warranty of Merchantability
(Cal. Civil Code §§ 1791–1792 & 1794) on Behalf of the California Class**

124.   Plaintiff realleges and incorporates by reference ¶¶ 1-77 above.

125.   This claim is brought on behalf of the California Class (referred to throughout this Count as "the Class.")

126.   California Civil Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability.

127.   The Class Child Seats are "consumer goods" within the meaning of California Civil Code § 1791 as they are bought for use primarily for personal, family, or household purposes.

128.   Plaintiff and the Class are "buyers" of the Class Child Seats within the meaning of California Civil Code § 1791(b).

129.   Britax is the "manufacturer" of the Class Child Seats within the meaning of California Civil Code § 1791(j).

130.   Britax failed to comply with the obligations of California Civil Code §§ 1791-1792 and thereby caused damage to Plaintiff and the Class.

131.   Specifically, Britax manufactured, tested, advertised, promoted, marketed, sold, and distributed the Class Child Seats.

132.   At the time Britax manufactured, tested, advertised, promoted, marketed, sold, and distributed the Class Child Seats, Britax knew of the particular purposes for which the Class Child Seats were intended and impliedly warranted the Class Child Seats to be of merchantable quality.

133.   Britax breached the implied warranty of merchantability and the Class Child Seats were not of merchantable quality because: (a) the Class Child Seats were mislabeled; (b) the Class Child Seats lacked a minimum level of quality that reasonable consumers would expect; (c) the Class Child Seats would not pass without objection in the trade; (d) the Class Child Seats were not fit for ordinary purposes for which such goods are used insofar as they do not provide the level of safety and protection of an ordinary car seat; (e) for the same reason, the Class Child Seats did not conform to the

promises or affirmations of fact made on the container and/or label; (f) the Class Child Seats did not have the quality that reasonable buyers, including Plaintiff and the Class members, would expect; and (g) the Class Child Seats are substantially certain to malfunction during certain normal and foreseeable conditions of use, including in a moderate impact collision.

134.   Britax did not properly disclaim the implied warranty of merchantability.

135.   Plaintiff and Class members were damaged by Britax's failure to comply with its statutory obligations and under the implied warranty of merchantability and, therefore, Plaintiff and the Class members are entitled to recover damages, including but not limited to actual, expectation, and benefit of the bargain damages; and they are entitled to other legal and equitable relief.

136.   More specifically, Britax's breach of the warranty caused Plaintiff and the Class economic harm for which Plaintiff and the Class are entitled to (a) monetary damages, (b) costs, (c) reasonable attorney's fees, and (d) all appropriate equitable relief including injunctive relief enjoining Britax from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and requiring Britax to commence a corrective advertising campaign and/or to otherwise notify the public of the safety hazards inherent in the Class Child Seats.

### COUNT V: Violation of Various State Consumer Protection Laws On Behalf of the Multistate Class

137.   Plaintiff realleges and incorporates by reference ¶¶ 1-77 above.

138.   Plaintiff brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes against Britax on behalf of the Multistate Class (referred to throughout this Count as "the Class").

139.   The various state laws cited below, upon which this Count is premised, are consonant with one another and with California law, both procedurally and substantively.

140.   Britax has engaged in deceptive, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiff and the Class, as described

herein, including the knowing and intentional misrepresentations and omissions described with respect to the marketing, advertising, promotion, packaging, labeling, and sale of the Class Child Seats.

141. Britax's deceptive, unfair, unconscionable, and fraudulent acts and practices have been carried out in the course of conducting Britax's business, trade, and commerce.

142. Such acts and practices—including Britax's intentional efforts to mislead consumers and to conceal information regarding the safety and quality of the Class Child Seats—are willful, unfair, unconscionable, deceptive, immoral, unethical, oppressive, unscrupulous, contrary to public policy, and substantially injurious to consumers, including Plaintiff and the Class.

143. Such acts and practices, including Britax's misrepresentations and omissions, have the capacity to mislead, deceive, and confuse a substantial portion of the public and all reasonable consumers in a material way and have in fact misled, deceived, and confused Plaintiff and the Class in a material way, as Britax intended.

144. Britax's intentionally false, deceptive, misleading, and confusing representations and omissions would be material to any ordinary, average, and reasonable consumer's decision whether to buy the Class Child Seats, given that they pertain to the most fundamental and important feature of the Class Child Seats—child safety. No reasonable consumer would have purchased either of the Class Child Seats but for Britax's acts and practices, including its misrepresentations and omission, described throughout this Complaint.

145. Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Britax's acts and practices, including the misrepresentations and omissions described herein.

146. Britax's acts are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being, and are motivated solely by the desire for financial gain.

147.   As a direct and proximate result of Britax's deceptive practices, Plaintiff and the Class have sustained injury and economic loss.

148.   Plaintiff's claims are representative of similar claims available to Class members under the laws of other states, which are consonant with one another and with California law. Britax's acts and practices described herein constitute unfair competition and are deceptive, unfair, unconscionable, and fraudulent in violation of the following state consumer protection statutes:

     a.   Florida Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat., *et seq*.;

     b.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.;

     c.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq*.;

     d.   North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.; and

     e.   Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq*.

149.   Accordingly, Plaintiff and the Class demand (a) actual damages, (b) statutory damages and penalties, (c) punitive damages, (d) attorney's fees and costs, (e) and all appropriate equitable relief including injunctive relief enjoining Britax from continuing to conduct business through unlawful, unfair, unconscionable, and/or fraudulent acts and business practices, and requiring Britax to commence a corrective advertising campaign and/or to otherwise notify the public of the safety hazards inherent in the Class Child Seats.

## COUNT VI: Unjust Enrichment or Quasi-Contract/Restitution
### On Behalf of the California Class & the Multistate Class

150.   Plaintiff realleges and incorporates by reference ¶¶ 1-77, above.

151.   Plaintiff brings this claim for the violation of various states' common law, all

of which are consonant with one another.

152.   Plaintiff brings this Count on behalf of the California Class and the Multistate Class, (referred to throughout this Count as "the Class").

153.   By way of its wrongful acts and practices, including its representations and omissions concerning the safety and the quality of the Class Child Seats, Britax charged, and Plaintiff and the Class paid, a higher price for the Class Child Seats than that which reflects their true value and Britax accordingly obtained monies that rightfully belong to Plaintiff and the Class.

154.   Plaintiff and the Class conferred a benefit on Britax by purchasing the Class Child Seats.

155.   Britax received a direct benefit from Plaintiff and the Class in the form of product sales, increased market share for the Class Child Seats, and resulting profits.

156.   The benefit was not conferred officiously or gratuitously.

157.   Britax appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and the Class.

158.   Under the circumstances, as described herein, it would be inequitable and unjust, and it would violate fundamental principles of justice, equity, and good conscience for Britax to retain this wrongfully obtained benefit.

159.   Accordingly, Plaintiff, on behalf of herself and the Class, seeks an order requiring Britax to disgorge the benefit, including all unwarranted profits, and to make restitution to Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests an order certifying the Class, naming Plaintiff as Class representative, requiring Britax pay for Class notice, and appointing Plaintiff's counsel as Class counsel, and further seeks the following relief:

## COUNT I

A.   All appropriate equitable relief including injunctive relief enjoining Britax

from continuing to conduct business through unlawful, unfair, unconscionable, and/or fraudulent acts and business practices, and requiring Britax to commence a corrective advertising campaign and/or to otherwise notify the public of the safety hazards inherent in the Class Child Seats; and

B.   any such further relief in law or equity as this Court may deem just and proper.

**COUNTS II through VI**

A.   An order certifying the Class, naming Plaintiff as Class representative and appointing Plaintiff's counsel as Class counsel;

B.   an order declaring that Britax is financially responsible for notifying the Class members of the pendency of this action;

C.   monetary damages, including but not limited to any compensatory, incidental, consequential, statutory, and/or punitive damages in an amount that the Court or jury will determine, in accordance with applicable law and in accordance with the above allegations;

D.   statutory penalties;

E.   an award of restitution and disgorgement;

F.   all appropriate equitable relief including injunctive relief enjoining Britax from continuing to conduct business through unlawful, unfair, unconscionable, and/or fraudulent acts and business practices, and requiring Britax to commence a corrective advertising campaign and/or to otherwise notify the public of the safety hazards inherent in the Class Child Seats;

G.   reasonable costs and expenses of suit, including attorney's fees;

H.   pre- and post-judgment interest to the extent the allowed in law or in equity; and

1         I.    any such further relief in law or equity as this Court may deem just and proper.

2 Dated this 14th day of August, 2020

3                              *s/ Gretchen Nelson*
                             NELSON & FRAENKEL, LLP

4                              Gretchen Nelson (SBN 112566)
                             gnelson@nflawfirm.com

5                              Gabriel S. Barenfeld (SBN 224146)
                             gbarenfeld@nflawfirm.com

6                              601 So. Figueroa St., Suite 2050
                             Los Angeles, CA 90017

7                              Tel: (213) 622-6469
                             Fax: (213) 622-6019

8

9                              GREENE, BROILET & WHEELER LLP

10                             Christine D. Spagnoli (SBN 126353)
                            cspagnoli@gbwlaw.com

11                             100 Wilshire Blvd, 21st Floor
                            Tel:  (310) 340-6505

12                             Fax: (310) 576-1220

13                             LEVIN, PAPANTONIO, THOMAS,

14                             MITCHELL, RAFFERTY & PROCTOR, P.A.
                            Troy A. Rafferty (PHV forthcoming)

15                             trafferty@levinlaw.com
                            Matthew D. Schultz (PHV forthcoming)

16                             mschultz@levinlaw.com
                            316 S. Baylen St., Suite 600

17                             Pensacola, FL 32502
                            Tel: (850) 435-7140

18                             Fax: (850) 436-6140

19                             *Counsel for Plaintiff & the Proposed Classes*

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

3

demands a trial by jury on all claims and issues so triable.

4

Dated this 14th day of August, 2020

5

*s/ Gretchen Nelson*

NELSON & FRAENKEL, LLP

6

Gretchen Nelson (SBN 112566)

gnelson@nflawfirm.com

7

Gabriel S. Barenfeld (SBN 224146)

gbarenfeld@nflawfirm.com

8

601 So. Figueroa St., Suite 2050

9

Los Angeles, CA 90017

Tel: (213) 622-6469

10

Fax: (213) 622-6019

11

GREENE, BROILET & WHEELER LLP

12

Christine D. Spagnoli (SBN 126353)

cspagnoli@gbwlaw.com

13

100 Wilshire Blvd, 21st Floor

Santa Monica, CA 90401

14

Tel:  (310) 340-6505

Fax: (310) 576-1220

15

16

LEVIN, PAPANTONIO, THOMAS,

MITCHELL, RAFFERTY & PROCTOR, P.A.

17

Troy A. Rafferty (PHV forthcoming)

trafferty@levinlaw.com

18

Matthew D. Schultz (PHV forthcoming)

mschultz@levinlaw.com

19

316 S. Baylen St., Suite 600

Pensacola, FL 32502

20

Tel: (850) 435-7140

Fax: (850) 436-6140

21

22

*Counsel for Plaintiff & the Proposed Classes*

23

24

25

26

27

28