ERIK K. SWANHOLT, CA Bar No. 198042
    eswanholt@foley.com
KRISTINA M. FERNANDEZ MABRIE, CA Bar No. 318315
    kfernandezmabrie@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2411
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendant BRITAX
CHILD SAFETY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET STEVENS, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>        vs.<br><br>BRITAX CHILD SAFETY, INC.,<br><br>                          Defendant. | Case No. 2:20-cv-07373-MCS-AS<br><br>**DEFENDANT BRITAX CHILD SAFETY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE ALLEGATIONS IN PLAINTIFF'S COMPLAINT**<br><br>FILED CONCURRENTLY WITH<br>  i. DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE; AND<br>  ii. DECLARATION OF ERIK K. SWANHOLT<br><br>COMPLAINT FILED: AUGUST 14, 2020<br>HON. MARK C. SCARSI<br><br>DATE: MAY 17 2020<br>TIME: 9:00 A.M.<br>PLACE: COURTROOM 7C |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     RELEVANT BACKGROUND .............................................................. 2

        A.      PLAINTIFF AND THE OVERLY BROAD PROPOSED CLASS. ........... 2

        B.      THE CAR SEATS AND THE MAGAZINE ARTICLE THAT
                FORMS THE BASIS OF THIS ACTION. ................................... 3

        C.      BRITAX'S PROMOTIONAL MATERIALS VARIED OVER TIME. ..... 5

III.    LEGAL STANDARD ........................................................................... 7

        A.      RULE 12(F) LEGAL STANDARD. .......................................... 7

        B.      RULE 23 LEGAL STANDARD. .............................................. 7

IV.     ARGUMENT ....................................................................................... 8

        A.      CLASS MEMBERS EXPERIENCED DIFFERENT
                REPRESENTATIONS, HAD DIFFERENT REASONS FOR
                PURCHASING THEIR RESPECTIVE CHILD SEATS, AND
                LIKELY USED THEIR CHILD SEAT IN DIFFERENT WAYS. ........... 8

        B.      A PROPOSED CLASS IS NOT ADMINISTRATIVELY FEASIBLE. .... 10

        C.      THE PROPOSED CLASS IS OVERBROAD ................................. 11

        D.      THE FAC FRAUD CLAIMS SHOW THAT INDIVIDUAL ISSUES
                PRECLUDE SATISFACTION OF RULE 23(B)(3). ....................... 14

        E.      CLASS MEMBERS DO NOT SATISFY THE TYPICALITY
                REQUIREMENT. .................................................................. 16

V.      CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adashunas v. Negley*,
   626 F.2d 600 (7th Cir. 1980) ........................................................................ 10

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................... 13

*Aiken v. Obledo*,
   442 F. Supp. 628 (E.D. Cal. 1977) ............................................................... 10

*ASARCO Inc. v. Kadish*,
   490 U.S. 605 (1989) ...................................................................................... 13

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ........................................................................ 12

*California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
   917 F.2d 1171 (9th Cir. 1990) ...................................................................... 17

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................................ 14

*Clark v. LG Elecs. U.S.A., Inc.*,
   2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ................................................. 7

*Coleman v. McLaren*,
   98 F.R.D. 638 (N.D. Ill. 1983) ..................................................................... 12

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .......................................................................................... 8

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ...................................................................................... 13

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ........................................................................ 10

*Deitz v. Comcast Corp.*,
   No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ........ 10

*Duffin v. Exelon Corp.*,
No. CIV A 06 C 1382, 2007 WL 1385369 (N.D. Ill. May 4, 2007) ............................ 12

*In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*,
831 F. Supp. 2d 507 (D. Mass. 2011) .................................................... 13, 14

*Gartin v. S & M NuTec LLC*,
245 F.R.D. 429 (C.D. Cal. 2007) ......................................................... 16

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................ 7, 8, 17

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ......................................................... 15

*Haley v. Medtronic, Inc.*,
169 F.R.D. 643 (C.D. Cal. 1996) ......................................................... 15

*Hawkins v. Comparet-Cassani*,
251 F.3d 1230 (9th Cir. 2001) ........................................................... 17

*Horowitz v. Pownall*,
105 F.R.D. 615 (D. Md. 1985) ........................................................... 15

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ............................................................. 14

*Kay v. Wells Fargo & Co. N.A.*,
No. C 07-01351 WHA, 2007 U.S. Dist. LEXIS 55519 (N.D. Cal. July 24, 2007) ................................................................................... 8

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015) ........................................................ 11

*Lightbourn v. Cty. of El Paso, Tex.*,
118 F.3d 421 (5th Cir. 1997) ............................................................ 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................... 13

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) .............................................................. 7

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ................................................................................. 8

*Martin v. Dahlberg, Inc.*,
    156 F.R.D. 207 (N.D. Cal. 1994) ..................................................................... 15, 16

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ........................................................................... 10

*Mazza v. Am. Honda Motor Co.*,
    *666 F.3d 581 (9th Cir. 2012)* ................................................................................ 12

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ................................................................................................ 13

*In re Neurontin Mktg., Sales Practices & Prod. Liab. Litig.*,
    257 F.R.D. 315 (D. Mass. 2009) ............................................................................ 17

*Newman v. RCN Telecom Servs., Inc.*,
    238 F.R.D. 57 (S.D.N.Y. 2006) ............................................................................. 17

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) ............................................................................. 14

*Ritti v. U-Haul Int'l, Inc.*,
    No. CIV.A. 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ....................... 17

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ........................................................................... 6, 12

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................. 12, 15

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
    279 F.3d 817 (9th Cir. 2002) ................................................................................. 12

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ................................................................................... 7

*State of Alaska v. Suburban Propane Gas Corp.*,
    123 F.3d 1317 (9th Cir. 1997) ............................................................................... 17

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 7, 8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................. 14

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................. 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ..................................................... 8

*In re ZZZZ Best Sec. Litig.*,
    No. CV-87-3574-RSWL(BX), 1994 WL 675160 (C.D. Cal. May 25,
    1994) ........................................................................................ 15

**State Cases**

*Caro v. Procter & Gamble Co.*,
    18 Cal. App. 4th 644 (1993) ..................................................... 16

*Pfizer Inc. v. Superior Court*,
    182 Cal. App. 4th 622 (2010) ................................................... 12

**Federal Statutes**

49 C.F.R. ............................................................................................ 3, 4

Fed. R. Civ. P. 23(a)(3) ..................................................................... 17

Fed. R. Civ. P. 23(d)(1)(D) .................................................................. 7

**State Statutes**

California Consumer Legal Remedies Act ........................................... 3

California's False Advertising Law ...................................................... 3

California's Unfair Competition Law .................................................... 3

# I.     <u>INTRODUCTION</u>

Yes the Court can strike class allegations at the pleading stage and, yes, this is just the case for the Court to do that very thing.

For fraud class actions, satisfying the required element of predominant common issues is a major hurdle to class certification because there is great divergence within a putative class on such matters as (1) what specific representations were made to or received by a given class member and (2) the extent to which reliance on such statements may be shown.  Such is the case here.  In addition to lacking merit generally (as described in more detail in Britax's concurrently filed Motion to Dismiss), Plaintiff's claims here cannot possibly be certified as a class action and no amount of discovery will change this fact.  Accordingly, all claims relating to class treatment should be stricken.

Specifically, as set forth below, courts in this and other Circuits agree that fraud, misrepresentation, and omission based claims are rarely susceptible to class treatment because of the inescapable abundance of individualized factual inquiries necessary to establish the requisite elements of materiality, reliance and damage.  Here, the First Amended Complaint ("FAC") does not include any allegation of a ubiquitous false statement of fact that all Britax Frontier ClickTight Harness-2-Booster and the Britax Pioneer Harness-2-Booster (the "Car Seats") owners allegedly saw and relied upon.  Indeed, the FAC does not point to one or two allegedly false statement that appeared on the Class Child Seat packaging, or which appeared in some massive media advertising campaign, that might be susceptible to class-wide exposure.  Instead, the FAC refers to a hodgepodge of quotes providing a variety of statements on different issues, puffery and color from Britax's general website, "microsites," Facebook groups, Instagram accounts, Amazon.com, and numerous other forms of media made over a period of seven years.  The FAC does not, because it cannot, allege that all Class Child Seat purchasers saw and relied upon any of the cited Britax statements, in part because many of those purported representations were not made until three years after Plaintiff herself purportedly purchased her Britax Child Seat.  This is fatal to her class claims.

Second, the FAC does not make allegations relating to reliance on any specific statements or representations by Plaintiff, let alone by the class generally, and, again, it cannot.  This is because the lack of any uniform set of statements or even subjects makes it impossible to allege any uniform degree of reliance on those statements.  Instead, putative Car Seat class members relied on a variety of sources to make the child safety seat purchases, including friends, pediatricians, retailer advertisements, statements by retailers and the millions of reviews and advice pages on the internet.  Plaintiff's proposed class of all individuals who purchased a Car Seats "for personal or household use" therefore includes individuals who would have purchased the Car Seats regardless of the 2019 Consumer Reports article (the "Article") that forms the entire basis of Plaintiff's FAC.

Third, because reliance on representations and reasons for purchasing a Class Child Seat are subjective and unprovable, any proposed class is not ascertainable.

Fourth, and relatedly, both the Plaintiff and the proposed class as pled lack standing because they have not suffered an injury in fact and there is no risk of future harm.  This is true because neither the Plaintiff nor any class member has claimed any physical injury because of use of the product and, because the product is no longer on the market, there is no risk of future injury.

Finally, due to the issues of reliance on representations and reasons for purchasing a Class Child Seat, individual issues will predominate.  The claims raised in the FAC—violations of the CLRA, FAL, UCL, Implied Warranty and Unjust Enrichment—are all based on allegations of misrepresentation and fraud.  This will require that Plaintiff establishes reliance, which she cannot.

For the reasons established below, this Court should strike all class allegations from the First Amended Complaint.

## II.      RELEVANT BACKGROUND

### A.      Plaintiff and the Overly Broad Proposed Class.

Plaintiff brings this action on behalf of herself and two putative classes:  the California Class and the Multistate Class (collectively, "the Proposed Class").  The

California Class consists broadly of "all residents of California who purchased for personal or household use a new Frontier ClickTight Harness-2-Booster Seat or Pioneer Harness-2-Booster Seat from four years prior to the filing of the Complaint."  (FAC ¶ 52.)  The Multistate Class consists of "all residents of Florida, Illinois, New York, North Carolina and Washington who purchased for personal or household use a new Frontier ClickTight Harness-2-Booster Seat or Pioneer Harness-2-Booster Seat."

The FAC attempts to state claims for:  (1) Violation of the California Consumer Legal Remedies Act; (2) Violation of California's False Advertising Law; (3) Violation of California's Unfair Competition Law; (4) Breach of the Implied Warranty of Merchantability; and (5) Unjust Enrichment.  Plaintiff, on behalf of herself and the above described Proposed Class, alleges that class members did not receive the benefit of the bargain for one or more of the Car Seats and received less than the full value of the Car Seats due to Britax's "misrepresentations and/or omissions."  The FAC further alleges that Class members would not have purchased the Class Child Seat or paid as much if they had known about the alleged defect.  Based on these claims, Plaintiff seeks injunctive relief; compensatory, incidental, consequential, punitive, and statutory damages; restitution and disgorgement; interest; and attorney's fees and costs.

**B.  The Car Seats And The Magazine Article that Forms the Basis of this Action.**

The Car Seats are belt-positioning harness to booster seats, also known as a combination seats, harnessed booster seats, harness-2-booster seats, or toddler booster seats.  The Car Seats are forward-facing only car seats with a 5-point harness that can also be used as a booster seat utilizing the vehicle's seatbelt.  When used in the booster seat mode, the Car Seats are designed to elevate a child so that the vehicle's lap and shoulder belts are positioned to fit the child properly.  See 49 C.F.R. § 571.213.

The FAC alleges that, despite admittedly being fully compliant and meeting the safety requirements of NHTHA's FMVSS 213 standard, the Car Seats each have a design defect:  the structure surrounding the harness of the Car Seats and the top tether are capable

of detaching from the seat.  The FAC further alleges that this can occur when using the Car Seats "within their stated weight capacities for harness mode."  Plaintiff vaguely alleges that Britax learned of this potential issue sometime in 2015, when a Britax Child Passenger Safety Advocacy Manager was advised by an undisclosed "crashworthiness expert" that another, completely different type and model Britax car seat exhibited a similar failure mode during earlier Consumer Reports testing.

The above "defect claim" is based entirely off of the March 2019, Consumer Reports magazine Article.  In the Article, Consumer Reports wrote that it subjected the Frontier and Pioneer car seats to its own proprietary *newly developed* crash testing.  (FAC ¶ 39.)  According to the Article, because all car seats sold in the U.S. are required to meet FMVSS 213 standards that provide a threshold level of safety, it developed its own test protocol to determine which seats provide an "added level of safety," in their sole discretion, above and beyond the FMVSS 213 standards.[1]  In other words, the testing that Consumer Reports subjected the Car Seats to was not designed to determine whether the car seats are safe by federal standards created and validated by data and research, but rather to determine whether they are "even safer" than required based on a confidential and independent protocol and ranking system set by this one magazine.[2]  Car seats in the U.S. are built to satisfy the FMVSS 213, not a custom made test designed to generate failing grades, sensational headlines and magazine article clicks.

---

[1] Indeed, the new crash test is described as follows by Consumer Reports:  "For many years, Consumer Reports performed simulated frontal crash testing at 30 mph based on the criteria outlined in Federal Motor Vehicle Safety Standard 213 (FVMSS 213), which is NHTSA's standard for crash performance of child restraints (child car seats).  Manufacturers self-certify that their car seats meet this federal standard.  [¶] *Consumer Reports developed its own test protocol* to provide consumers with comparative information on a car seat's potential to offer an **extra margin of safety in certain crash conditions.**  We evaluate performance on a scale that ranks seats from those that have the least potential to offer that extra margin (these are rated as "basic") to seats that have the most potential ("best").  *Our focus on that extra margin is based on the fact that **any car seat sold in the U.S. already must provide an essential level of safety** under the government standards it must meet.*"  *See* https://www.consumerreports.org/car-seats/how-consumer-reports-tests-child-car-seats/  (Emphasis added)

[2] As set forth in detail in Britax's Motion to Dismiss, NHTSA evaluated and rejected a test similar to that advocated by Consumer Reports stating, among other things, "there is no safety need" to increase the speed of its tests.  *See* 49 C.F.R. §§ 571.VI.

### C.    Britax's Promotional Materials Varied Over Time.

As a result of an 80-year safety heritage and 25-year history of selling car seats in the United States[3], Britax proudly promotes its car seats as providing exceptional safety, restraint, and impact protection.  (FAC ¶¶ 23-37.)  Britax advertises that its products contain industry-leading safety features, which are often patented technologies developed by its engineering teams, such as its proprietary SafeCell Impact Protection technology and proudly displays labels on its car seats that have SafeCell Impact Protection.  (FAC ¶¶ 28, 29)  The FAC alleges that people relied on Britax's general advertising, when purchasing the Frontier and that, based on the Article's test results, the general advertising was false or misleading.  However, a majority of the marketing or advertising statements that Plaintiff refers to is generalized to Britax's safety standards and technology as a whole— not specifically to the Car Seats.  For example, the FAC refers to Britax's name as an example of a representation:  "Britax's safety claims begin with the company's very name—Britax Child Safety, Inc.—and the homepage of its website, which promotes 'Safety You Can Trust.'" (FAC ¶ 27; See also FAC ¶¶ 28-37.)  The only statements specific to the Car Seats are as follows:

- The Car Seats are labeled with a tag stating they contain Britax's proprietary SafeCell Impact Protection feature that is further discussed under the heading "Safety, Comfort & Convenience" on Britax's website.  (FAC ¶ 28.)

- Britax states that the SafeCell Impact Protection will "protect your child well beyond the federal safety standards," and that, "as the leader in safety technology, only Britax Car Seats have SafeCell impact protection."  Britax also states, "we feel that 'safe enough' simply isn't good enough for your child. . . SafeCell's innovative technologies combine to provide exceptional energy absorption and movement limitation in a collision, keeping your child safe and you free from worry along the way." (FAC ¶ 29.)

- Britax's website states:  "Safety, comfort and convenience make the Frontier ClickTight an exceptional Harness-2-Booster Seat. . . . SafeCell Impact Protection surrounds your

---

[3] https://us.britax.com/why-britax/history-heritage/

child in advanced layers of protection that absorb crash forces to keep your little one safe." (FAC ¶ 31.)

- For the Pioneer, Britax's website states:  "SafeCell Impact Protection surrounds your little one in advanced layers of safety.  Side Impact Protection helps absorb crash forces . . . ."  (FAC ¶ 31.)

- The webpages for both the Car Seats has a "Superior Protection" tab with safety information, which states that the Car Seats have "2 layers of Side Impact Protection" and "Help keep your child safe during a collision with an energy-absorbing shell and foam lined head rest."  (FAC ¶ 32.)

- The webpages for the Car Seats also have a "Superior Protection" tab with information regarding the "SafeCell Impact Absorbing Base," and the "Impact-Stabilizing Steel Frame."  (FAC ¶ 32.)

Importantly, none of the representations above relate in any way to the alleged defect identified by the Consumer Reports article, which is related solely to the harness system. (FAC ¶ 38.)   And, as Plaintiff acknowledges, Britax car seats are well known and recognized by industry leaders, including Consumer Reports, for their safety and reliability.[4]  (FAC ¶ 33.)

Plaintiff claims that she, as well as Proposed Class members, would not have purchased a Car Seat and/or would not have paid as much had they known about the alleged "defect" purportedly identified in the Article.  Plaintiff further claims that she suffered loss of use and usefulness of the car seat once she learned of the alleged "defect" and stopped using the seat.  She does not allege, and she cannot allege, that she actually saw *any* of the identified representations because they were *all* made *after* she bought her Car Seat.  This is true for the bulk of the Proposed Class.

---

[4] As Plaintiff acknowledges, Consumer Reports rates one of Britax's popular car seats, the Boulevard, #1 among car seats as of March 2020.  (FAC ¶ 33.)

### III.    LEGAL STANDARD

The Court has two statutory bases at its disposal to strike the class allegations in the Complaint:  (1) Rule 12(f); and (2) Rule 23.  *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

#### A.    Rule 12(F) Legal Standard.

Pursuant to Rule 12(f), a party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  The Supreme Court has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Under the authority of Federal Rule of Civil Procedure 12(f), "a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained."    *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013); *see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.") (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

#### B.    Rule 23 Legal Standard.

In addition to Rule 12(f), Rule 23(d)(1)(D) provides that a court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D); *see also Tietsworth*, 720 F. Supp. 2d at 1146; *Kay v. Wells Fargo & Co. N.A.*, No. C 07-

01351 WHA, 2007 U.S. Dist. LEXIS 55519, at *5-6 (N.D. Cal. July 24, 2007).  This authority empowers the Court "to avoid the expenditure of time and money that must arise from litigating spurious issues by disposing of those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).  This is especially important because "[t]he class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.*  (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  "Although in some cases a district court should allow discovery to aid in the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied . . . ." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  "Sometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action.  *General Telephone Co. of Southwest*, 457 U.S. at 160.

## IV.   **ARGUMENT**

### A.   **Class Members Experienced Different Representations, Had Different Reasons For Purchasing Their Respective Child Seats, And Likely Used Their Child Seat In Different Ways.**

The class members' asserted claims are premised on the purported representations (plainly, advertisements) set forth above, *supra* at II.C., which were made about the general safety of Britax car seats and other safety technology that Britax uses exclusively in its car seats, including the Car Seats.  But, Car Seat owners likely received a wide variety of representations (if any), from a variety of sources during the class period.  This is especially true considering that almost all of the representations/advertisements identified in the FAC are dated ***after*** many of the class members likely purchased their Car Seats (class period purportedly dates back to 2016).  See, e.g., FAC, ¶¶ 27-34 (describing statements on

Britax's website dated June 25, 2020); ¶ 35 (describing statement on Britax's Amazon page date June 25, 2020); ¶ 36-37 (describing statements on Britax's Facebook and Instagram from June 26, 2020); ¶ 37 (describing a statement on Britax's Instagram page from February 2020.).  Nor could class members have relied on any of the representations related to the Car Seat they did not buy (whether it be the Pioneer or the Frontier).  Indeed, the FAC fails to provide any specifics about the representations that the class members purportedly relied upon, and Plaintiff contends only generally that she and class members generally relied on statements made by Britax.  (FAC ¶ 46)  Plaintiff purportedly bought her car seat in 2017 so admittedly *she* did not rely on *any* of the representations cited in the FAC and the same must be true for the vast majority of any purported class of Car Seat purchasers.

The FAC does not state the exact reason why Plaintiff, or any other Proposed Class member, chose to purchase a Car Seat but implies that the decision was made entirely based on the above-described statements about safety.  (FAC ¶¶ 46, 48.)  This strains all credulity, as almost all car seat buying guides—including Consumer Reports—remind buyers that all car seats sold today are held to the same safety standards by the National Highway Traffic Safety Administration and they all provide oodles of advice on which car seat to buy and why.  (See e.g. Choosing the Best Car Seat, Consumer Reports (May 1, 2018), https://www.consumerreports.org/cro/car-seats/buying-guide/index.htm ("All car seats are required to meet federal safety standards in a 30-mph crash test."); Best Infant Car Seats of 2020, Babylist (May 14, 2020) (https://www.babylist.com/hello-baby/best-car-seats) ("First things first:  spending less money on a car seat doesn't mean it's any less safe.  Every car seat sold in the US must meet the same federal safety standards set forth by the National Highway Transportation Safety Administration."); Dylan Campel, Buying a Car Seat 101, What To Expect.  (Nov. 20, 2020), https://www.whattoexpect.com/baby-products/car-seats/car-seat-buying-guide/ ("Keep in mind that all car seats sold to-day are held to the same safety standards by the National Highway Traffic Safety Administration, but some aim to go above and beyond with additional side impact protection or parent-

proof latching systems.")   Rather, parents consider a myriad of other factors when purchasing a car seat including:   budget, ease of installation, vehicle compatibility, comfort, fabric, chemical free/organic, overall appearance and what their friends and families use.  Indeed, safety is important, but it is one factor.  Plaintiff's Proposed Class of all individuals who purchased a Car Seat "for personal or household use" (FAC ¶52) unavoidably includes individuals who would have purchased the Car Seat regardless of the alleged issues written in the Article.

### B.    A Proposed Class Is Not Administratively Feasible.

While the efficacy of the "ascertainability" standard in the Ninth Circuit is in doubt, we know from recent Ninth Circuit holdings that a class proponent must proffer an administratively feasible way to identify class members.  Indeed, it must be possible for members to readily identify themselves, so that the parties and the court in the future can evaluate those bound by any judgment under *res judicata* principles.  See *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).  Thus, a Proposed Class definition must be precise, objective, and identifiable based on readily available criteria.  *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009); *Aiken v. Obledo*, 442 F. Supp. 628, 658 (E.D. Cal. 1977) (class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether an individual is a member.").  Membership must not turn on extensive fact-finding, a resolution of the merits of the claims, or the subjective belief of class members.  *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) (class certification denied because of extensive fact finding necessary to identify members of class).  Here, it is impossible for Plaintiff to proffer an administratively feasible way to identify and verify class members.

First, the Proposed Class unavoidably requires each class member to declare to the Court the reasons for why he or she purchased a Car Seat and the representations upon which he or she relied in choosing to buy a Car Seat rather than any of the other car seat products on the market.  These Propose Class Members will not have objectively verifiable

evidence of these bases but instead will largely testify based on memory. Courts and defendants are not required to take such testimony on faith and thus it fails to provide an administratively feasible way to identify and *verify* class members. *Kosta v. Del Monte Foods, Inc.,* 308 F.R.D. 217, 223 (N.D. Cal. 2015) (requiring class members to be identifiable by objective, verifiable criteria "without extensive and individualized fact-finding or minitrials") (collecting cases).

Second, the Proposed Class does not include all Car Seat purchasers. Instead, it is limited to those individuals who purchased a Class Child Seat "for personal or household use." (FAC ¶52.) This limitation is vague and suggests that Car Seats can be purchased for other purposes without provided any basis for how this fact would be determined or verified. Indeed, neither the parties nor the Court have any way of readily identifying those purchasers who purchased for "personal use" or "household use" as opposed to some other use. In addition, because the definition is premised on a purchase for "personal or household use," it explicitly excludes those who purchased a Car Seat to provide it as a gift and those who received it as gift.

The Court and the parties therefore have no means of determining which Class Child Seat owners may be entitled to notice regarding class treatment of this action, any proposed settlement, or of the effect of any judgment. In fact, because the Proposed Class is premised on the reason for the purchase or the bases upon which the Proposed Class relied in making their purchasing decision, the only way to establish who is a member of the Proposed Class is by assessing the state of mind of each and every person who purchased a Car Seat. Indeed, many Proposed Class members likely have no recall at all of *why* they purchased one particular car seat instead of another. On this basis, certification of this class is not possible and again, no amount of discovery can rectify this issue therefore striking these claims now is appropriate.

## C. The Proposed Class Is Overbroad.

"[N]o class may be certified that contains members lacking Article III standing.... The class must therefore be defined in such a way that anyone within it would have

standing." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (*citing Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006)); *Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012)(citing Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 1385369, at *1 & 4 (N.D. Ill. May 4, 2007) (proposed class including individuals lacking standing are overbroad and not appropriate for class treatment); *Coleman v. McLaren*, 98 F.R.D. 638, 643–44 (N.D. Ill. 1983) (denying certification because proposed class included individuals lacking standing); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631–32 (2010) ("the class certified by the trial court...is grossly overbroad because many class members, if not most, clearly are not entitled to restitutionary disgorgement....In sum, the certified class...is overbroad because it presumes there was a class-wide injury.")

Plaintiff's class definition is inherently flawed in that it contains numerous, and possibly almost entirely, individuals who do not have standing.  As noted in Britax's Motion to Dismiss, to establish Article III standing, a plaintiff must show:  "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008).  A concrete injury is one that is "distinct and palpable ... as opposed to merely abstract." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002).  Claims brought under California's UCL must satisfy federal standing requirements under Article III as well.  See *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), n. 4 (9th Cir.2009) (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court "must meet the stricter federal standing requirements of Article III.").

Plaintiff alleges the class members "did not realize the benefit of the bargain in purchasing" the Car Seats and, had they known of the alleged misrepresentations and safety issues, they would not have purchased the Car Seat and/or would have paid much less. (FAC ¶ 50.)  This economic loss theory of harm does not allege a "concrete," "actual," or

"imminent" injury as required to confer Article III standing. *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); See also *In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 510–12 (D. Mass. 2011) (plaintiffs' failure to allege specific facts establishing that the product was dangerous resulted in a claim "simply too hypothetical or conjectural to establish Article III standing").

Indeed, the FAC pleads no facts establishing an economic injury that confers Article III standing upon the Proposed Class. The FAC does not plausibly plead benefit-of-the-bargain damages, because, indeed, the Car Seats worked as expected and represented for class members. There are no allegations in the FAC to the contrary. The FAC does not plead that the Car Seat stopped working or did not perform as expected in an accident. Nor does the FAC plead any viable theory of overpayment or price premium, because the FAC does not allege that class members would have purchased a cheaper alternative, or that the market value of the Car Seats would have been less had the challenged (in most cases, later-made, never read) representations been altered or omitted.

Likewise, the FAC fails to plead that there is any future risk of harm. The Supreme Court has stated that a plaintiff's asserted injury must be actual or imminent—which the Court has described as certainly impending and immediate—not remote, speculative, conjectural, or hypothetical. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("actual or imminent"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ("certainly impending"); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("not conjectural or hypothetical"); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J., joined by Rehnquist, C.J., and Stevens and Scalia, JJ.) (not "remote or speculative"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("immediate"); (internal quotation marks, citations, and alterations omitted in above quotations).

Indeed, if "'all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent injuries could be dressed up as increased risk of future

injury.'" *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007) (citing *Nat. Res. Def. Council v. Envtl. Prot. Agency*, 464 F.3d 1, 6 (D.C. Cir. 2006).   Therefore, federal courts have strongly "cautioned that [the speculative] category of injury may be too expansive." *Id.*; cf. Cass R. Sunstein, What's Standing After Lujan? Of Citizen Suits, "Injuries," and Article III, 91 Mich. L. Rev. 163, 228 (1992) (under Supreme Court's precedents, there "may be serious standing problems" in cases involving consumer safety challenges based on increased risk).   In other words, to confer standing based on future harm, a plaintiff must plead a future injury that is "certainly impending," meaning "a credible or substantial threat to [Plaintiffs'] health." *In re Fruit Juice Products Marketing and Sales Practices Litigation*, 831 F. Supp. 2d at 510.   The FAC has not met this burden as to Plaintiff or the Proposed Class members.   The absence of allegations establishing a "certainly impending" risk of physical injury forecloses any standing based on future harm.   See *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 289 (3d Cir. 2018) ("had [plaintiff] alleged that she was at risk of developing ovarian cancer, she may have established standing based on a theory of future physical injury" but she "chose not to"); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class[.]").

Certification of this class is therefore impossible because the definition includes "individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damage.   Such individuals would lack standing to bring these claims." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) (granting motion to strike class allegations).

### D.   The FAC Fraud Claims Show That Individual Issues Preclude Satisfaction Of Rule 23(B)(3).

Plaintiff's CLRA, FAL, UCL, Implied Warranty and Unjust Enrichment claims are based on allegations of misrepresentation and fraud.   Such claims are rarely certified as individual issues overwhelmingly predominate the action.   See *Gonzalez v. Proctor &*

*Gamble Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007) ("a fraud class action cannot be certified when individual reliance will be an issue," quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 656 (C.D. Cal. 1996) ("it seems particularly unwise for the Court to certify a class action where fraud is one of the principal claims set forth by plaintiffs"); *In re ZZZZ Best Sec. Litig.*, No. CV-87-3574-RSWL(BX), 1994 WL 675160, at *8 (C.D. Cal. May 25, 1994) ("the courts of this circuit that required a showing of individual reliance in state fraud claims ... have generally refused to initially certify common law fraud claims because individual issues predominate over common issues"); *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 217 (N.D. Cal. 1994) ("individualized questions of reliance... preclude certification of plaintiffs' class for purposes of resolving these claims").

In fact "[t]he Advisory Committee, in commenting on Rule 23(b)(3), has noted that 'although having some common core, a fraud case may be unsuited for treatment as a class action if there were material variations in the representations made or in the kinds or degree of reliance by persons to whom they were addressed.'" *Horowitz v. Pownall*, 105 F.R.D. 615, 619 (D. Md. 1985) (quoting Fed. R. Civ. P. 23(b)(3), Adv. Comm. note; 39 F.R.D. at 103 (1966)).

As noted in Britax's Motion to Dismiss, these claims require reliance/materiality or at least a showing that Britax caused an "injury in fact." The court refused to certify a class in *Martin v. Dahlberg, Inc.*, 156 F.R.D. 207 (N.D. Cal. 1994) when confronted with similar issues of reliance and materiality:

> "The present record suggests that a myriad of factors may have influenced the decisions of putative class members . . . Even among the named plaintiffs, there is a need for fact-specific and individualized examination of the reliance issue. Some putative class members […] may have been influenced by advertisements totally unrelated to the [product] and claims of reduced background noise. Others, like [named plaintiff], may have seen

> the [product] ads, but are uncertain as to what effect those
> commercials had on their purchasing decision. ... Others may
> have come to purchase [the product] as a result of word of mouth
> and other factors unrelated to [defendants conduct].   In all
> likelihood, many individuals who purchased [the product] did so
> for a variety of factors, any one of which, or combination thereof,
> actually may have caused the customer to make the purchase."

*Martin*, 156 F.R.D. at 215 (emphasis added); *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 437 (C.D. Cal. 2007) ("different class members may have relied on different representations.  Moreover, some class members may not have relied on—or even been exposed to—any representation."); see also *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668–669 (1993) (denying class certification on materiality grounds when claims were based on varying misrepresentations regarding quality of orange juice).

As in the cases above, establishing reliance and materiality here, even for Plaintiff, will be a difficult task and is certainly inappropriate for collective resolution on a class basis.  Each class member will have to individually establish that he or she "would not have acted as he did if he had known of the concealed or suppressed fact."  See *id.*  Given the likelihood of varying experiences, establishing reliance and materiality as to each of the purported class members will require thousands of individualized mini-trials.

### E.   Class Members Do Not Satisfy The Typicality Requirement.

For certification to be appropriate, the class representative's claims and the defenses to such claims must typify the claims and defenses applicable to the class.  Fed. R. Civ. P. 23(a)(3); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).  Typicality focuses on the similarity between the named plaintiff's and the absent class members' respective legal and remedial theories.  *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).  Although Plaintiff need not be the mirror image of the absent class members, she must be "part of the class and possess the same interest and suffer the same injury as the class members" and must not be subject to unique defenses not shared by

putative class members. *General Telephone Co. of Southwest*, 457 U.S. at 156; *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 76 (S.D.N.Y. 2006); *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("Thus, when named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification.")

The same individual issues that preclude satisfaction of the predominance requirement make it infeasible for Plaintiff to be typical of the class she proposes. The predominance and typicality requirements often overlap. *In re Neurontin Mktg., Sales Practices & Prod. Liab. Litig.*, 257 F.R.D. 315, 321 (D. Mass. 2009); *Ritti v. U-Haul Int'l, Inc.*, No. CIV.A. 05-4182, 2006 WL 1117878, at *8 (E.D. Pa. Apr. 26, 2006).

Although the First Amended Complaint references a number of allegedly false representations, Plaintiff fails to state that she relied on any of them specifically, implicitly admitting that she did not (no doubt because they are all dated well after she allegedly purchased her Child Car Seat). On this basis alone, she cannot satisfy the typicality requirement. In addition, by virtue of when she purchased her Frontier, she could not have been subject to the same statements as those identified in the First Amended Complaint or published during the class period because they were made years after she purchased her Frontier. See, *supra*, IV.A. The bases for her claims therefore differ from the absent class members. Clearly, resolution of these critical issues regarding which representations were seen and relied on by which class members cannot be resolved based on common proof because Plaintiff is likely not typical of the individuals she seeks to represent. No amount of discovery will alter this fact.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court strike all class allegations from the FAC with prejudice.

DATED: January 29, 2021

**FOLEY & LARDNER LLP**
Erik K. Swanholt
Kristina M. Fernandez Mabrie

_____
Erik K. Swanholt
Attorneys for Defendant BRITAX CHILD
SAFETY, INC.