1  GREENE, BROILLET & WHEELER LLP
2  Christine D. Spagnoli (SBN 126353)
   cspagnoli@gbw.law
3  100 Wilshire Blvd, 21st Floor
4  Santa Monica, CA 90401
   Tel.: (310) 576-1200 / Fax: (310) 576-1220
5
6  NELSON & FRAENKEL, LLP
   Gretchen Nelson (SBN 112566)
7  gnelson@nflawfirm.com
8  Gabriel S. Barenfeld (SBN 224146)
   gbarenfeld@nflawfirm.com
9  601 So. Figueroa St., Suite 2050
   Los Angeles, CA 90017
10 Tel.: (844) 622-6469 / Fax: (213) 622-6019
11
12 [Additional Counsel on Signature Page]

13 Counsel for Plaintiff & the Proposed Classes

14        UNITED STATES DISTRICT COURT

15        CENTRAL DISTRICT OF CALIFORNIA

16

17 | MARGARET STEVENS, | Case No.: 2:20-cv-07373-MCS-AS |
18 | individually and on behalf of all others similarly situated, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BRITAX CHILD SAFETY, INC.'S MOTION TO DISMISS COMPLAINT** |
19 | | |
20 | Plaintiff, | |
21 | vs. | |
22 | BRITAX CHILD SAFETY, INC., | DATE:   MAY 17, 2020 |
23 | | TIME:   9:00 A.M. |
   | | PLACE: COURTROOM 7C. |
24 | Defendant. | |
25 | | COMPLAINT FILED: AUGUST 14, 2020 |
26 | | HON. MARK C. SCARSI |

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTS ................................................................................................................ 3

    A.   Overview ............................................................................................... 3

    B.   The Child Seats Are Defective ............................................................. 4

III.   Legal Standards ................................................................................................ 6

    A.   Rule 12(b)(1) ......................................................................................... 6

    B.   Rule 12(b)(6) ......................................................................................... 6

IV.    Argument ........................................................................................................... 7

    A.   Plaintiff Alleges a Plausible Injury in Fact and Article III Standing ...... 7

        1. Plaintiff's Injury Occurred at the time of Purchase ......................... 7

        2. Article III Standing Does Not Require a Malfunction .................... 9

    B.   Plaintiff Need Not Choose Between Legal and Equitable Remedies ... 11

    C.   Plaintiff Has Standing to Seek Injunctive Relief ............................... 13

    D.   NHTSA Does Not Have Primary Jurisdiction ................................... 13

    E.   Plaintiff Has Standing to Bring Out-of-State Claims ......................... 16

    F.   Britax's Rule 12(b)(6) Arguments Should Be Denied ........................ 17

        1. Plaintiff's UCL, CLRA, and FAL Claims Satisfy Rule 9(b) .......... 17

        2. Plaintiff Adequately Alleges Breach of Implied Warranty ............. 24

        3. Unjust Enrichment Is an Independent Cause of Action .................. 25

    G.   Leave to Amend ................................................................................. 25

V.     CONCLUSION ................................................................................................ 26

1

## TABLE OF AUTHORITIES

2

### Cases

*Aberin v. Am. Honda Motor Co.*,

    Inc., No. 16-CV-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018)........12

*Adkins v. Comcast Corp.*,

    No. 16-CV-05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) .................12

*Allen v. Hylands, Inc.*,

    773 Fed. Appx. 870 (9th Cir. 2019) .......................................................................18

*American Suzuki Motor Corp. v. Super. Ct.*,

    37 Cal.App.4th 1291 (1995) .............................................................................16, 24

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,

    783 F.3d 753 (9th Cir. 2015)..................................................................................13

*Backus v. Gen. Mills, Inc.*,

    122 F.Supp.3d 909 (N.D. Cal. 2015) ......................................................................8

*Banh v. Am. Honda Motor Co., Inc.*,

    2:19-CV-05984-RGK (ASx), 2020 WL 4390371, at *11

    (C.D. Cal. July 28, 2020) ......................................................................................22

*Beloit Corp. v. Emmett & Chandler Companies, Inc.*,

    940 F.2d 1533 (9th Cir. 1991)................................................................................20

*Brown v. MCI WorldCom Network Servs., Inc.*,

    277 F.3d 1166 (9th Cir. 2002).................................................................................16

*Bussian v. DaimlerChrysler Corp.*,

    411 F.Supp.2d 614 (M.D.N.C. 2006)......................................................................16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Choi v. Kimberly-Clark Worldwide, Inc.*,

   SA-cv-190468-DOC (ADSx), 2019 WL 4894120

   (C.D. Cal. Aug. 28, 2019) ....................................................................8, 24, 25

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,

   173 F.3d 725 (9th Cir. 1999)....................................................................21

*Cohen v. Ainsworth Pet Nutrition, LLC*,

   No. 2:20-CV-05289-MCS (ASx), 2020 WL 7250329

   (C.D. Cal. Oct. 26, 2020) ....................................................................7

*Collins v. Navistar, Inc.*,

   214 Cal.App.4th 1486 (2013)....................................................................5, 23

*Continental Airlines, Inc. v. McDonnell Douglas Corp.*,

   216 Cal.App.3d 388 (1989)....................................................................20

*Cooper v. Pickett*,

   137 F.3d 616 (9th Cir. 1997)....................................................................22

*Corral v. Carter's Inc.*,

   1:13-CV-0262 AWI SKO, 2014 WL 197782 (E.D. Cal. Jan. 16, 2014) ...............24

*DaimlerChrysler Corp. v. Cuno*,

   547 U.S. 332 (2006) ....................................................................9

*DaimlerChrysler Corp.*,

   200 F.Supp.2d 1208 (N.D. Cal. 2002) ....................................................................16

*Daniel v. Ford Motor Co.*,

   806 F.3d 1217 (9th Cir. 2015)....................................................................22

*Daniel v. Ford Motor Co.*,

   No. 2:11-02890 WBS-EFBx, 2016 WL 2899026 (E.D. Cal. May 18, 2016)........21

*Davidson v. Kimberly-Clark Corporation*

   889 F.3d 956 (9th Cir. 2018)....................................................................9, 13

*Davis v. HBSC Bank Nev., N.A.*,

   691 F.3d 1152 (9th Cir. 2012)....................................................................19

*Deras v. Volkswagen Grp. of Am., Inc.*,
   No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ...............12

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009).................................................................................6

*Donohue v. Apple, Inc.*,
   871 F.Supp.2d 913 (N.D. Cal. 2012)................................................................16, 17

*ESG Capital Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016)...............................................................................25

*Falk v. Gen. Motors Corp.*,
   496 F.Supp.2d 1098 (N.D. Cal. 2007) ..............................................................19, 21

*Garcia v. Harley-Davidson Motor Co., Inc.*,
   No. 19-cv-02054-JCS, 2019 WL 6050768
   (N.D. Cal. Nov. 15, 2019) ..................................................................................14, 16

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003)...............................................................................21

*Hadley v. Kellogg Sales Co.*,
   273 F.Supp.3d 1052 (N.D. Cal. 2017) ..................................................................20

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).........................8

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)................................................................................8

*In re Actimmune Mktg. Litig.*,
   614 F.Supp.2d 1037 (N.D. Cal. 2009),
   aff'd, 464 Fed. Appx. 651 (9th Cir. 2011)............................................................17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   295 F.Supp.3d 927 (N.D. Cal. 2018) ....................................................................8

*In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*,
   831 F.Supp. 2d 507 (D. Mass. 2011) ...................................................................10

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ................................................................... 10

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. 19-MD-02913-WHO, 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ............ 25

*In re Tobacco II Cases*,
46 Cal.4th 298, 312 (2009) ..................................................................... 20

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*,
890 F.Supp.2d 1210, 1224 (C.D. Cal. 2011) ........................... 15, 18, 20, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods.
Liab. Litig.*, 754 F.Supp.2d 1145 (C.D. Cal. 2010) ............................... passim

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*,
959 F.3d 1201 (9th Cir. 2020) ............................................................ 5, 23

*IntegrityMessageBoards.com v. Facebook, Inc.*,
No. 18-CV-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ............... 12

*Isip v. Mercedes-Benz USA, LLC*,
155 Cal.App.4th 19 (2007) ..................................................................... 25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................... 18, 19

*Keegan v. Am. Honda Motor Co., Inc.*,
284 F.R.D. 504 (C.D. Cal. 2012) ............................................................ 22

*Kerin v. Titeflex Corp.*,
770 F.3d 978 (1st Cir. 2014) ................................................................... 10

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) ............................................................................. 7

*Langan v. Johnson & Johnson Consumer Cos.*,
897 F.3d 88 (2d Cir. 2018) ..................................................................... 17

*Lewis v. Rodan & Fields*, LLC,
18-CV-02248-PJH, 2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ..................... 24

*Lilly v. Jamba Juice Co.*,

    No. 13-cv-02998-JST, 2015 WL 1248027 at *3 (N.D. Cal. Mar. 18, 2015).........13

*LiMandri v. Judkins*,

    52 Cal. App.4th 326 (1997)...................................................................................21

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992) ..............................................................................................9

*MacDonald v. Ford Motor Co.*,

    37 F. Supp.3d 1087 (N.D. Cal. 2014) ..................................................................22

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,

    519 F.3d 1025 (9th Cir. 2008)..............................................................................25

*Marsikian v. Mercedes Benz USA, LLC*, No. CV 08–04876 AHM (JTLx),

    2009 WL 8379784 (C.D. Cal. May 4, 2009) ..................................................23, 24

*Maya v. Centex Corp.*,

    658 F.3d 1060 (9th Cir. 2011) ...............................................................................7

*Mazza v. Am. Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012)..................................................................................7

*McGee v. S-L Snacks Nat'l*,

    982 F.3d 700 (9th Cir. 2020)...........................................................................7, 10

*McGill v. Citibank, N.A.*,

    2 Cal.5th 945 (2017)............................................................................................13

*Melendres v. Arpaio*,

    784 F.3d 1254 (9th Cir. 2015) .............................................................................17

*Moore v. Mars Petcare U.S., Inc.*,

    966 F.3d 1007 (9th Cir. 2020)..............................................................................18

*Mosqueda v. Am. Honda Motor Co., Inc.*,

    443 F.Supp. 3d 1115 (C.D. Cal. 2020)................................................................21

*Moyle v. Liberty Mut. Ret. Ben. Plan*,

    823 F.3d 948 (9th Cir. 2016)................................................................................12

*Nguyen v. Nissan N. Am., Inc.,*

   932 F.3d 811 (9th Cir. 2019) ............................................................................ 9, 10

*O'Neil v. Simplicity, Inc.,*

   574 F.3d 501 (8th Cir. 2009) ................................................................................... 10

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.,*

   268 F.3d 1133 (9th Cir. 2001) ................................................................................. 25

*Park v. Thompson,*

   851 F.3d 910 (9th Cir. 2017) ..................................................................................... 7

*Peckerar v. Gen. Motors,* LLC,

   No. ED-cf-182153-DMG-SPx, 2020 WL 6115083

   (C.D. Cal. Aug. 17, 2020) .................................................................................. 8, 14

*Reniger v. Hyundai Motor Am.,*

   122 F.Supp.3d 888 (N.D. Cal. 2015) ................................................................ 15, 16

*Rivera v. Wyeth-Ayerst Labs.*

   283 F.3d 315 (5th Cir. 2002) ................................................................................... 10

*Safe Air for Everyone v. Meyer,*

   373 F.3d 1035 (9th Cir. 2004) ................................................................................... 6

*Salas v. Toyota Motor Sales, U.S.A., Inc.,*

   cv-15-8629-FMO, 2019 WL 1940619 (C.D. Cal. Mar. 27, 2019) ............ 19, 20, 21

*Sloan v. Gen. Motors LLC,*

   No. 16-cv-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ................... 8

*Sonner v. Premier Nutrition Corp.,*

   971 F.3d 834 (9th Cir. 2020) ............................................................................. 11, 12

*Sugasawara v. Ford Motor Co.,*

   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ........................................................ 8

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,*

   307 F.3d 775 (9th Cir. 2002) ................................................................................... 15

PLAINTIFF'S OPPPOSITION TO DEFENDANT BRITAX'S MOTION TO DISMISS COMPLAINT
Case No. 2:20-cv-07373-MCS-AS

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,

   83 F.Supp.3d 855 (N.D. Cal. 2015) ........................................................24

*Vicuna v. Alexia Foods, Inc.*,

   No. C 11-6119 PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ....................12

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ..............................................9

*Wildin v. FCA US LLC*,

   No. 3:17 CV-02594-GPC-MDD, 2018 WL 3032986

   (S.D. Cal. June 19, 2018) ................................................................12

*Williams v. Gerber Products Co.*,

   552 F.3d 934 (9th Cir. 2008)........................................................19, 20

*Williamson v. Mazda Motor of Am., Inc.*,

   562 U.S. 323 (2011) ..............................................................2, 5, 23

*Wilson v. Hewlett-Packard Co.*,

   668 F.3d 1136 (9th Cir. 2012) ..........................................................23

**Statutes, Regulations, and Rules**

12(b)(1) ................................................................................6

49 C.F.R. § 571.213 ...........................................................passim

49 U.S.C. § 30101 ....................................................................15

49 U.S.C. § 30103(b)(1) ...............................................................15

65 F.R. 1224-01 ..................................................................14, 23

65 FR 1224-01 .........................................................................6

85 F.R. 69388-01 .....................................................................14

Cal. Bus. & Prof. Code § 17200 et seq..............................................4, 5

Cal. Civ. Code § 1780(a)(1) ..........................................................11

Cal. Bus. & Prof. Code § 17500 et seq..............................................4, 5

Cal. Civ. Code § 1750 et seq. .......................................................4, 5

Fed.R.Civ.P. 8(a)(3)..................................................................12

Fed.R.Civ.P. 9(b) ................................................................................. 17, 18

Fed.R.Civ.P. 12(b)(6) ................................................................................ 6

Fed.R.Civ.P. 23(b)(3), ............................................................................. 17

**Misc.**

Newberg on Class Actions § 2:6 .............................................................. 17

Plaintiff Margaret Stevens, on behalf of herself and the proposed class ("Class"), submits the following opposition to Defendant Britax Child Safety, Inc.'s ("Britax") motion to dismiss ("Motion" or "Mot.," ECF 32-1) Plaintiff's First Amended Complaint ("FAC," ECF No. 25).[1]

## I.    <u>INTRODUCTION</u>

Britax claims that safety is merely one among an array of features, including "aesthetics," "color," and "green characteristics," that are "critical to some" and "unimportant to others" when purchasing a child car seat. (Mot. at p. 1.) But few products come to mind for which safety is more ascendent. Britax knows this because safety is eponymous to its brand – "Britax Child **Safety**, Inc"; safety is at the forefront in Britax's marketing and labeling; and Britax consistently promotes specific technologies that allow it to surpass basic safety standards. (FAC, ¶¶ 23-37.)

While representing itself as a company that obsessively prioritizes safety—where "'safe enough' simply isn't good enough"—Britax learned, back in 2015, that its Frontier and Pioneer model seats ("Child Seats") had a dangerous defect. Specifically, a hardware component that performs the critical function of connecting the harness to the steel frame is prone to failure. This causes the harness to detach from the frame in an accident, leaving the child virtually unrestrained. (*Id*., ¶¶ 37-38.) Britax continued to sell the seats, however, without warning unsuspecting parents about the deadly hazard until recently, when it re-designed the newer model seats and quietly discontinued the Frontier and Pioneer models.

In its Motion, Britax seeks to divert the Court's attention from the central issue on which its primary arguments rise or fall: has Plaintiff alleged a material safety defect? Because the answer is yes, Britax fixates on a different question: do the child seats comply with the Federal Motor Vehicle Safety Standards ("FMVSS")? The

---

[1]    Plaintiff is filing this opposition concurrently with her opposition to Britax's motion to strike (ECF No. 37) and incorporates the arguments made in her memorandum in opposition to the motion to strike.

problem for Britax is that FMVSS compliance is not dispositive of whether a defect exists – especially not at the pleading stage.

According to Britax, parents only pay for the Child Seats to meet **minimum** safety standards. Thus, so long as the seats meet those standards, the company is free to ignore any other **known** defects. By selling car seats that comply with the FMVSS, Britax claims that it has upheld its end of the bargain, and as a matter of law and pleading, the seats cannot be found to be defective. The Court should reject that novel and deeply flawed proposition, which casts aside Supreme Court precedent. *See, e.g., Williamson v. Mazda Motor of Am., Inc.,* 562 U.S. 323, 332-26 (2011). Plaintiff alleges a material defect that impairs the essential function of the Child Seats. That the seats comply with the FMVSS does not mean, *a fortiori,* that they are safe.

Britax also doubles down on its safety claims, boasting of "an 80-plus-year safety heritage." (Mot. at 2.) That safety heritage is not unmarred, however. For example, a recent report by the U. S. House Subcommittee on Economic and Consumer Policy ("House Report") found that Britax and two other manufacturers "deceptively market their booster seats with unsubstantiated claims about 'safety features,' while failing to disclose that those features have not been objectively shown to increase child safety." (House Report at 22-23.)[2] "Lax federal regulation," the Subcommittee observed, "enables these booster seat companies to mislead consumers…." *Id.* at 4. While the House Report addresses a different safety issue than that alleged by Plaintiff, it pointedly illustrates that Britax can neither rest on the

---

[2]    See Staff Report of the Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform titled "Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Meaningless Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats," dated December 10, 2020 (available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf (last accessed on February 16, 2021).

laurels of its safety heritage nor rely on FMVSS compliance to undermine Plaintiff's allegations.

Once the Court rejects the subterfuge that Plaintiff has not adequately alleged an unreasonable safety defect, Britax's main arguments unravel.

***First***, where, as here, the plaintiff pays for a product that has an undisclosed safety defect, Article III standing and economic harm are established under an overpayment or "benefit of the bargain" theory.

***Second***, Britax argues that the Court should dismiss Plaintiff's fraud-based claims because she did not meet Rule 9(b)'s specificity requirements for pleading misrepresentations. But even if that were true (it is **not**), Britax's sole argument regarding Plaintiff's omissions-based theory is that its duty to disclose only arises when a plaintiff adequately alleges an unreasonable safety hazard. Because Plaintiff has alleged a material safety defect, she has satisfied Rule 9(b).

Britax asserts several other arguments, including that Plaintiff does not have standing to claim equitable relief or future injunctive relief; that NHTSA has primary jurisdiction over the matter; that Plaintiff does not have standing to bring claims for states in which she does not reside; and that unjust enrichment is not a stand-alone cause of action. For a multitude of reasons, which we address below, these arguments fare no better. The Court should deny Britax's Motion in its entirety.

## II.   FACTS

### A.   Overview

Combination car seats are used with a harness until the child outgrows them, at which point they convert to a booster seat. (*Id.,* ¶ 2.) The benefit of a combination seat is that there is no need to purchase a separate booster.  Plaintiff paid $272 for a new Frontier combination seat on March 4, 2017. She purchased the seat without knowledge of any defect. (*Id*., ¶ 48.) And, safety was her chief concern. (*Id*., ¶ 49.)

Britax markets the Child Seats as providing optimal safety, protection, and restraint. (*Id.,* ¶¶ 5, 23-37.) Through widespread marketing and its labeling, the

company repeatedly hammers the mantra that it implements industry-leading safety features. For example, Britax boasts that specific technologies implemented in the seats' "5-point harness" and "high-strength steel frame" provide enhanced protection and "movement limitation" beyond basic safety standards. (*Id.,* ¶¶ 28-35.) Britax also claims that the steel frame of the Child Seats offers added strength at the connection point. (*Id.,* ¶ 32.) These are the very components that are prone to failure as a result of the defect. (*Id.,* ¶¶ 38-40.)

Britax deceived Plaintiff and the Class into buying and overpaying for the defective Child Seats by making false claims about their safety and failing to disclose the defect. Plaintiff's fraud-based consumer claims allege both affirmative misrepresentations and material omissions and concealment. (*Id.,* ¶¶ 41-47.)[3]

**B.   The Child Seats Are Defective**

Plaintiff alleges that the structure surrounding the Child Seats' harness can detach from the seat due to a defective hardware component that connects the harness to the steel frame. (*Id.,* ¶¶ 3, 38-40.) This issue arises when the Child Seats are used within their given weight capacities in harness mode and can leave the child virtually unrestrained during a collision. (*Id.*)

Unable to contravene these allegations, Britax quibbles with the testing procedures described in a March 2019 Consumer Reports article, which, it claims, are required to illuminate the defect. (Mot. at 4-6.) But Britax initially learned that the Child Seats were prone to catastrophic failure years earlier. In 2015, a well-known crashworthiness expert told a "Britax Passenger Safety Advocacy Manager" that a another Britax car seat—with a design similar in pertinent respects to the Frontier and

---

[3] Plaintiff asserts six claims: (1) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (4) breach of implied warranty; (5) violation of various state consumer protection laws; and (6) Unjust Enrichment and Quasi-Contract. (*Id.* at ¶¶ 78-159.)

Pioneer models—failed during testing. (*Id.,* ¶ 38.) The expert disclosed the testing failure to the Manager, both verbally and in a follow-up email.

Then, in March 2019, Consumer Reports subjected the Child Seats to crash testing designed to simulate real-world crash conditions and determined that the harness was prone to failure. (*Id.,* ¶¶ 39-40.) Significantly, the 2019 Consumer Reports testing demonstrated the same defect mechanism that the 2015 testing had revealed. (*Id.,* ¶¶ 38-40.)  Britax quietly stopped selling the Child Seats shortly after the 2019 Consumer Reports article (*id.,* ¶ 57), re-designed its newer model combination seats, and now sells them under different model names.

Britax claims that Plaintiff's defect theory is flawed because the Consumer Reports article relied on testing designed to determine whether car seats "offered an extra margin of safety in certain crash conditions above and beyond FMVSS 213," (Mot. at 4), the standard that governs car seats. 49 C.F.R. § 571.213. But compliance with FMVSS 213 does not equate to safety. *See Williamson,* 562 U.S. at 332-36; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.,* 959 F.3d 1201, 1213 (9th Cir. 2020) ("*In re Volkswagen*"); *Collins v. Navistar, Inc*., 214 Cal.App.4th 1486, 1511-12 (2013) (Compliance with "Federal Motor Vehicle Safety Standard regarding windshield design did not preempt claim that windshield could have been designed to use [a stronger material]"). As *Williamson* explained, preventing "States from imposing stricter standards would treat all such federal standards as if they were maximum standards, eliminating the possibility that the federal agency seeks **only** to set forth a **minimum** standard potentially **supplemented** through state tort law." 562 U.S. 323, 332-36 (emphasis added).

In a letter to all car seat manufacturers, former NHTSA Administrator Ricardo Martinez, M.D., emphasized that car seats should be engineered to higher standards than NHTSA's basic requirements: [O]ur review of NHTSA's compliance test results [for FMVSS 213] during the past few years indicates that many restraints have been engineered to just comply with some of the most safety-critical requirements of the

standard, rather than being engineered with substantial compliance margins. 65 FR 1224-01, 1224-25. Dr. Martinez added that every manufacturer should "ensure that their restraints perform above the minimum requirements of our standard." *Id.* at 1225. Thus, whether the Child Seats meet the performance requirements of FMVSS 213, which NHTSA encourages car seat manufacturers to exceed, is not dispositive on the defect issue.

Plaintiff has alleged a material defect, which compromises the Child Seats' basic function: restraining the child during an accident.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Rule 12(b)(1) allows a party to seek dismissal for lack of subject-matter jurisdiction. *Id.* Jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a defendant attacks subject-matter jurisdiction on the face of the complaint, as Britax does here,[4] the Court assumes the allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir.2011).

### B.   Rule 12(b)(6)

Rule 12(b)(6) allows a pleadings challenge for "failure to state a claim upon which relief can be granted." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).

---

[4]   While Britax points out that a court may look beyond the pleadings under Rule 12(b)(1), it does not introduce any declarations or other extrinsic evidence in support of its motion to dismiss for lack of subject matter jurisdictions. (Mot., at 9-19.) Britax's arguments are thus directed to the face of the Complaint. (*Id.*)

Generally, a court accepts the factual allegations as true and views them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).

## IV.   ARGUMENT

### A.   Plaintiff Alleges a Plausible Injury in Fact and Article III Standing

Plaintiff alleges that Britax made false representations and material omissions regarding the Child Seats and defect. (FAC, ¶¶ 41-50.) If the defect had been disclosed, Plaintiff and the Class would not have purchased the Child Seats or paid as much for them. (*Id.,* ¶¶ 48-50*.*) Further, once Plaintiff learned of the safety defect, she stopped using the seat. (*Id.,* ¶ 50.) These allegations establish that Plaintiff suffered cognizable economic loss because she did not receive the benefit of the bargain. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("'[a] plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value" (quotation omitted)); *Maya v. Centex Corp*., 658 F.3d 1060, 1069 (9th Cir. 2011); *Cohen v. Ainsworth Pet Nutrition, LLC*, No. 2:20-CV-05289-MCS (ASx), 2020 WL 7250329, at *2 (C.D. Cal. Oct. 26, 2020); *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 329 (2011).

### 1.   Plaintiff's Injury Occurred at the time of Purchase

Britax argues that Plaintiff's economic loss is not cognizable because it amounts to a speculative risk of future harm. (Mot. at 13-14.) However, a benefit of the bargain or overpayment theory establishes injury **at the time of purchase**. *McGee,* 982 F.3d at 706. Courts consistently recognize overpayment as a viable theory of economic injury for products, such as the Child Seats at issue here, that are alleged to compromise safety.[5]

---

[5]   *See, e.g., Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 595-96 (9th Cir. 2012) ("To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'"); (*Peckerar v. Gen. Motors*, LLC, No. ED-cf-182153-DMG-SPx, 2020 WL 6115083 at *2 n. 3

1    Britax relies on *Herrington v. Johnson & Johnson Consumer Companies*, *Inc.*,

2 No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) to support its claim

3 that Plaintiff has not alleged a sufficiently concrete hazard. *Herrington* is readily

4 distinguishable. There, the plaintiffs alleged that defendant sold baby bath products

5 that contained "probable carcinogens." *Id.* at *2 (emphasis added). But the plaintiffs

6 could not allege the chemicals at issue were "in fact carcinogenic for humans." *Id.* at

7 *3. Thus, the court held that because '"[p]laintiffs do not allege that the levels of the

8 substances in [d]efendants' products were unsafe," they could not reasonably claim

9 an economic injury from purchasing a dangerous product. *Id.* at *5.

10   Here, by contrast, Plaintiff has alleged a discrete, non-hypothetical defect

11 mechanism, which causes the harness to be prone to failure during normal use

12 conditions. *See Backus v. Gen. Mills, Inc.*, 122 F.Supp.3d 909, 921 (N.D. Cal. 2015)

13 (distinguishing *Herrington,* 2010 WL 3448531; "Plausible allegations that a plaintiff

14 purchased a defective or unsafe product are sufficient to make out an economic

15 injury"). This exposed Plaintiff's child to an unreasonable safety hazard, so Plaintiff

16 stopped using the car seat. *In re Toyota* SUA, 754 F.Supp.2d 1166 (loss of usefulness

17 allegations confer standing); *Choi v. Kimberly-Clark Worldwide, Inc.*, SA-cv-

18 190468-DOC (ADSx), 2019 WL 4894120, at *9 (C.D. Cal. Aug. 28, 2019)

19 ("[P]laintiff purchased the defective tampons and suffered economic loss upon

20 purchase because she overpaid for a tampon that she could not use").

---

22 (C.D. Cal. Aug. 17, 2020) (citing *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105

23 (N.D. Cal. Aug. 21, 2019) ("Plaintiffs' allegation that the Alleged Defect amounts to

24 an 'irreparable safety hazard' is sufficient to state that the vehicle has lost its

25 usefulness." (citation omitted)); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales

26 Practices, & Prod. Liab. Litig.*, 295 F.Supp.3d 927, 945 (N.D. Cal. 2018) (citing

27 *Hinojos v. Kohl's Corp.,* 718 F.3d 1098 (9th Cir. 2013)); *Sloan v. Gen. Motors LLC*,

No. 16-cv-07244-EMC, 2020 WL 1955643, at *48 (N.D. Cal. Apr. 23, 2020); *In re

Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods.

Liab. Litig.*, 754 F.Supp.2d 1145, 1161–66 (C.D. Cal. 2010) ("*In re Toyota SUA*").

28

Britax also cites a trio of Supreme Court cases for the proposition that Plaintiff's harm is not "actual or imminent." (Mot. at 13-14.) But those cases do not even involve the purchase of an allegedly defective product. In *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), for example, the Court held that the plaintiff did not have standing since third parties, rather than the plaintiffs, were the object of the Government action at issue. *Id.* at 557-60. Similarly, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) merely addressed the question of whether state and city taxpayers had standing to challenge a franchise tax credit. *Id.,* pp. 346, 349. And the circumstances of *Whitmore v. Arkansas*, 495 U.S. 149 (1990) are equally far afield. *Whitmore* held a second death row inmate lacked standing to challenge the validity of death sentence imposed on another death row inmate who elected to forego his right of appeal. *Id.* at 177-78. None of these cases has bearing on Plaintiff's consumer claims.

### 2.   <u>Article III Standing Does Not Require a Malfunction</u>

Britax further argues, incorrectly, that Plaintiff does not adequately plead economic injury because she does not allege the Child Seat "stopped working" or "failed to perform." (Mot. at 10-11.) In *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019), the court rejected the argument that a product must malfunction for a plaintiff to suffer economic injury: "Plaintiff's theory is that the defect was inherent in each of the Class Vehicles at the **time of purchase**, regardless of when and **if** the defect manifested." *Id.* at 819 (emphasis added). The court explained, "Plaintiff does not seek damages for the faulty performance of the clutch system;.... Instead, Plaintiff's theory is that the allegedly defective clutch is itself the injury, regardless of whether the faulty clutch caused performance issues...." *Id.* at 821; *see In re Toyota SUA*, 754 F.Supp.2d at 1161, 1165 (a manifested defect is not necessary for standing); *see also Davidson v. Kimberly-Clark Corporation* 889 F.3d 956, 966 (9th Cir. 2018) (allegations that "flushable" wipes took hours to disintegrate were sufficient concrete

to establish economic injury, regardless of whether the plaintiff could show any actual damage to her pipes.'").

The Ninth Circuit has developed clear guidelines for determining whether "benefit of the bargain" and overpayment allegations confer Article III standing. That Britax primarily relies on slew of cases from outside the Ninth Circuit is telling.

*Kerin v. Titeflex Corp.*, 770 F.3d 978 (1st Cir. 2014), a First Circuit case on which Britax relies, is inapt because, unlike here, the plaintiffs in *Kerin* did not allege an actual safety defect but a hypothetical fire hazard in the remote event of a lightning strike. *Id.* at 983; *see also In re Fruit Juice Prod. Mktg. & Sales Practices Litig.*, 831 F.Supp. 2d 507, 509 (D. Mass. 2011) (The plaintiff's "exposure to 'potential adverse health effects'" from drinking fruit juice was "insufficient for Article III standing.").

Britax's reliance on the *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018) ("*Johnson & Johnson Talcum Powder*") decision is also misplaced. (Mot. at 12-13.) That is because in *McGee,* the Ninth Circuit cited to the **dissenting** opinion of the *Johnson & Johnson Talcum Powder* case*,* where Justice Fuentes reasoned that the plaintiff had suffered economic harm under a "benefit of the bargain" theory. *McGee*, 982 F.3d at 706 (citing *Johnson & Johnson Talcum Powder*, 903 F.3d at 298 (Fuentes, J., dissenting)).[6]

Britax fails to meaningfully distinguish or even address the Ninth Circuit cases, which hold that a malfunction is not required for a plaintiff to suffer economic harm under a "benefit of the bargain" theory of damages.[7]

---

[6] The *McGee* court distinguished the allegations described by Judge Fuentes that supported a benefit of the bargain theory from those in the case before it, where the plaintiff did not allege any representations about product safety. 982 F.3d at 706-07.

[7] Other cases Britax cites from outside the Ninth Circuit (which are inconsistent with Ninth Circuit law, *Nguyen*, 932 F.3d 818-21), hold that a defect must manifest for the plaintiff to suffer economic harm. *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002)

### B.     Plaintiff Need Not Choose Between Legal and Equitable Remedies

Britax argues that the Court should dismiss Plaintiff's claims under the UCL and CLRA because they seek equitable monetary relief when there is an adequate remedy at law.  (*See* Mot. at 14-15.) Britax's argument is premature and misguided.

*First*, under the CLRA, Plaintiff seeks **legal** damages, *See* Cal. Civ. Code § 1780(a)(1), **not equitable** monetary relief. (FAC, ¶ 93 ("Plaintiff seeks damages… based on the foregoing CLRA violations").) Britax cites *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ("*Sonner*") for the proposition that a party cannot recover equitable '"restitution under the UCL and CLRA in a diversity action"' when an adequate remedy at law exists. (Mot. at 15, quoting *Sonner* at 844.) But in *Sonner*, the plaintiff voluntarily chose to dismiss her claim for damages under the CLRA to pursue equitable monetary relief. *Sonner*, 971 F.3d at 837. Here, Plaintiff has not dismissed her damage claim under the CLRA. (FAC, ¶ 93.)

*Second,* while Plaintiff does seek equitable monetary relief under the UCL and FAL,[8] at this stage of the litigation, she may pursue legal and equitable monetary relief in the alternative. *Sonner* does not suggest otherwise. *Sonner's* holding must be understood in the context of its procedural posture: "On the brink of trial after more than four years of litigation, [the plaintiff] voluntarily dismissed her sole state law [CLRA] damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief." 971 F.3d at 837. The sole driving purpose of the of the maneuver was "to try the class action as a bench trial rather than to a jury." *Id.* And, this occurred **after** plaintiff had defeated defendant's summary judgment motion on the damages claim, demonstrating that an adequate remedy at law did exist. *Id.* at

_____

(refusing to recognize "benefit of bargain" theory).

[8]     Britax only appears to challenge Plaintiff's right to seek equitable relief under the UCL and CLRA, not the FAL.

838. Several courts have held claims for equitable relief that overlap with legal damages may be pleaded in the alternative.[9]

**Third**, in addition to equitable monetary relief under the UCL and FAL, Plaintiff also seeks injunctive relief under UCL, FAL (and the CLRA), for which there clearly is no adequate remedy at law. (FAC, ¶ 105 (requesting "injunctive relief [under the FAL] requiring Britax to cease and desist from any continued false advertising or other misconduct that is likely to reoccur and to notify consumers of the safety hazards…."); ¶ 122 (seeking a similar injunction under the UCL); ¶ 94 (seeking a similar injunction under the CLRA).)

Even the court in *Integrity*, which held that the plaintiff could not pursue equitable monetary relief under the UCL at the pleading stage (Mot. a 15, citing *Integrity*), found there to be no adequate remedy at law for the plaintiff's claims for injunctive relief. *Integrity,* 2020 WL 6544411, at **6-7. *Integrity* rejected the defendant's argument that damages could adequately protect the plaintiff from any harm that "'might befall [it] in the future.'" *Id.*

---

[9]     *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016) ("[a] demand for the relief…may include relief in the alternative or different types of relief.") (citing Fed.R.Civ.P. 8(a)(3)); *Aberin v. Am. Honda Motor Co.*, Inc., No. 16-CV-04384-JST, 2018 WL 1473085, *9 (N.D. Cal. Mar. 26, 2018) (there is "no bar to the pursuit of alternative remedies at the pleadings stage"); accord *Adkins v. Comcast Corp.*, No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017); *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27, 2012); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018); *but see IntegrityMessageBoards.com v. Facebook, Inc*., No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020) ("*Integrity*") (dismissing plaintiff's claims for equitable monetary relief that overlapped with legal damages). In *Wildin,* for example, the district court held that it need not reach that issue until a later procedural posture, when there is more certainty as to whether the legal relief sought would, in fact, be "adequate." *Wildin v. FCA US LLC,* No. 3:17 CV-02594-GPC-MDD, 2018 WL 3032986 (S.D. Cal. June 19, 2018).

1    At this stage, Plaintiff is entitled to seek equitable monetary relief and legal
2    damages in the alternative. Regardless, Plaintiff seeks legal damages, not equitable
3    relief, under the CLRA. And Plaintiff alleges claims for injunctive relief for which
4    there is no adequate remedy at law.

### C.   Plaintiff Has Standing to Seek Injunctive Relief

6    Britax next argues that, even if there is no adequate remedy at law and
7    injunctive relief would otherwise be available, Plaintiff does not have standing to seek
8    an injunction against the threat of future harm since she now has knowledge of the
9    alleged defect. In *Lilly,* the court rejected a nearly identical argument:

10       If the Court were to construe Article III standing for FAL and UCL claims
11       as narrowly as the Defendant advocates, federal courts would be precluded
12       from enjoining false advertising under California consumer protection laws
13       because a plaintiff who had been injured would always be deemed to avoid
14       the cause of the injury thereafter ("once bitten, twice shy") and would never
15       have Article III standing.

16   *Lilly v. Jamba Juice Co*., No. 13-cv-02998-JST, 2015 WL 1248027 at *3 (N.D. Cal.
17   Mar. 18, 2015) (collecting cases). Britax's argument has likewise been rejected by the
18   Ninth Circuit. *Davidson* 889 F.3d 956 (quoting *McGill v. Citibank, N.A*., 2 Cal.5th
19   945, 955 (2017) (A contrary conclusion would "undermine California's consumer
20   protection statutes and defeat injunctive relief" because injunctive relief is "the
21   primary form of relief available under the UCL").

### D.   NHTSA Does Not Have Primary Jurisdiction

23   The primary jurisdiction doctrine allows courts to determine "that an otherwise
24   cognizable claim implicates technical and policy questions that should be addressed
25   in the first instance by the agency with regulatory authority over the relevant industry
26   rather than by the judicial branch." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753,
27   760 (9th Cir. 2015) (quotations omitted). Significantly, primary jurisdiction

28

---

arguments are routinely rejected by courts in this circuit where plaintiff alleges a defect that impacts motor vehicle safety:

> [w]hile automobile defect cases are relatively common, **no court within the Ninth Circuit** has dismissed a request for injunctive relief in such a case under the primary jurisdiction doctrine. Many courts have declined to do so, even in some cases where—unlike here—the NHTSA has undertaken at least some steps to investigate the purported defect at issue.

*Garcia v. Harley-Davidson Motor Co., Inc*., No. 19-cv-02054-JCS, 2019 WL 6050768, at *6–7 (N.D. Cal. Nov. 15, 2019) (emphasis added) (collecting cases); *see Peckerar, supra,* 2020 WL 6115083, at *8.

Specifically, Britax's primary jurisdiction argument focuses on a November 2, 2020, Notice of Proposed Rule Making, 85 F.R. 69388-01 ("NPRM"), in which NHTSA stated it was not inclined to raise existing sled test speeds in FMVSS 213. *Id.* Britax claims that this lawsuit seeks to require NHTSA "[t]o amend FMVSS 213 or alter the testing protocol." (Mot. at 18.) Britax is wrong.

Plaintiff does **not** claim that the federal standard's minimal performance test requirements must be more severe or that Britax failed to comply with FMVSS 213. Regulatory compliance or noncompliance is therefore not at issue. Instead, Plaintiff alleges that a particular hardware component (with which the user does not interact) is defective and prone to failure. (FAC, ¶¶ 3-5, 38-40.) While different testing might have revealed the existence of the defect, Plaintiff challenges the safety of the Child Seats, **not** how the federal government required them to be tested. (*Id.*) Plaintiff's lawsuit presents no obstacle to NHTSA's regulatory objectives. Further, NHTSA itself has urged "each manufacturer of child restraints [including Britax] to ensure that their restraints perform above the minimum requirement of our standards." 65 F.R. 1224-01, 1224-25; *see*, *supra*, Section II(B) at 5-6.

Courts evaluating primary jurisdiction attacks rely on the Ninth Circuit's *Syntec* factors. *Syntek Semiconductor Co. v. Microchip Tech. Inc*., 307 F.3d 775, 781 (9th

Cir. 2002). These include "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* The *Syntec* factors do not favor application of the primary jurisdiction doctrine here.

(1) <u>The issue</u>. The motor vehicle safety issue here arises in connection with Plaintiff's claims based on consumer protection, unfair competition, and warranty laws. *See In re Toyota SUA*, 754 F.Supp.2d at 1200 (Plaintiffs' claims "are based on California statutes, the MMA, and general contract and tort principles. [They] therefore are 'within the conventional competence of the courts.'")

(2) <u>Administrative authority</u>. Plaintiff does not challenge FMVSS 213 or any other standard or regulation. 49 U.S.C. § 30101. And, her claims "do not require resolving questions of compliance with NHTSA regulations." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, 890 F.Supp.2d 1210, 1224 (C.D. Cal. 2011) ("*In re Toyota Hybrid Brake*"). "The classic primary jurisdiction situation is one," unlike here, "in which the plaintiffs' claims are predicated on imposing civil liability under a regulatory statute." *In re Toyota SUA*, 754 F.Supp.2d at p. 1200 n. 36.

(3) <u>Statutory authority</u>. As shown, the Safety Act's plain language reveals that Congress did not intend for NHTSA to have sole authority over motor vehicle safety standards.   See 49 U.S.C. § 30103(b)(1) ("[A] State…may prescribe a standard for…motor vehicle equipment obtained for its own use that imposes a higher performance requirement….") For that reason, courts in the Ninth Circuit have rejected primary jurisdiction arguments in cases involving vehicle defects and even recalls. *See, e.g.*, *In re Toyota Hybrid Brake*, 890 F.Supp.2d at 1223–24; *Reniger v. Hyundai Motor Am.*, 122 F.Supp.3d 888, 906–07 (N.D. Cal. 2015).

(4) <u>Expertise and uniformity</u>.  Plaintiff's state law claims are "within the conventional competence of the courts." *Kent v. DaimlerChrysler Corp.*, 200

F.Supp.2d 1208, 1219 (N.D. Cal. 2002) (quotation omitted). Cases involving vehicle defects are not generally so complex that they require specialized expertise or have been subjected to "comprehensive federal regulatory authority." *Reniger*, 122 F.Supp.3d at 907. Nor must the Court defer to NHTSA. *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). The relatively straightforward issue of a component part prone to breakage is well within this Court's competence. *Garcia,* 2019 WL 6050768, at *6–7.

Moreover, one of the out-of-circuit decisions on which Britax relies applied the primary jurisdiction doctrine to recalled vehicle models but declined to apply the doctrine to the other non-recalled models at issue. (Mot. at 19, citing *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 628–29 (M.D.N.C. 2006). In this case, there has been no recall.[10]

### E.   Plaintiff Has Standing to Bring Out-of-State Claims

In addition to asserting claims on behalf of the California Class, Plaintiff brings a claim on behalf of a Multi-state Class for deceptive acts and practices in violation of various states' consumer protection statutes. (FAC, ¶ 138.) Plaintiff alleges that her claims "are representative of similar claims available to Class members under the laws of other states," and that such claims are consistent "with one another and with California law." (*Id*., ¶ 146.)

Britax argues that a plaintiff who lives in one state does not have standing to bring state law claims of other states. (Mot. at 19.) But "[i]f certification is granted, the proposed class would contain plaintiffs who have personal standing to raise [the] claims [advanced by plaintiff]." *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012) (quotations omitted); *In re Actimmune Mktg. Litig*., 614 F.Supp.2d 1037,

---

[10]   Britax also cites *American Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.App.4th 1291, 1299–1300 (1995). But in that case, the court was ruling on class certification, and more specifically, the "superiority" element. The case did not address the issue of primary jurisdiction and is of little relevance here.

1053–54 (N.D. Cal. 2009), aff'd, 464 Fed. Appx. 651 (9th Cir. 2011); *Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015) (quoting Newberg on Class Actions § 2:6). The Second Circuit has explained, "[w]hether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93 (2d Cir. 2018); accord *Donohue*, 871 F. Supp. 2d at 921–22 (plaintiff's ability to assert absent class members' claims "boil[s] down to questions of whether common issues predominate….").

Britax's argument is a thinly-veiled predominance challenge and premature.

## F.    Britax's Rule 12(b)(6) Arguments Should Be Denied

### 1.    Plaintiff's UCL, CLRA, and FAL Claims Satisfy Rule 9(b)

Federal Rules of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud" to give defendants "notice of the particular misconduct" at issue. *Id.* Here, the FAC describes affirmative misrepresentations and a fraudulent concealment and omissions-based theory. (FAC, ¶¶ 41-47). Each satisfies Rule 9(b).

Plaintiff alleges a widespread and effective marketing campaign in which Britax "represented itself as prioritizing (even 'obsessing over') safety." *In re Toyota SUA*, 754 F.Supp.2d 1145, 1177. Starting in 2013, Britax's marketing included a national television spot, online video, digital advertising, social media, and Amazon webpage, and a robust website, which Britax promoted safety as being central to the company's brand. (FAC, ¶¶ 23- 37.)

Britax markets its car seats, including the Child Seats, as providing optimal safety, protection, and restraint. (*Id.*) The company repeatedly claims that its specific safety technologies, including its "5-point harness," "high-strength steel frame," and "SafeCell Technology," exceed basic safety requirements, providing enhanced protection and "exceptional movement limitation in a collision" that keeps the "your child safe giving you peace of mind along the way." (*Id,* ¶¶ 26-35.) Britax's webpage

for its Harness-2-Booster combination seats also boasts that the seat will "[p]rotect your growing child with a five-point harness." (*Id.,* ¶ 35.)  These representations go to the heart of the structural defect. (*Id.,* ¶¶ 3-4, 38-39.)

The entire Class, including Plaintiff, was exposed to Britax's uniform misrepresentations and labeling. (*Id.,* ¶¶ 5, 23,26, 46.) Prior to purchasing the Frontier Child Seat on Amazon, Plaintiff became familiar with Britax's claims of exceptional safety and protection. (*Id.,* ¶¶ 48-50.) Plaintiff also saw the label advertising safety. (*Id.*) As with any other parent, while shopping for the new Child Seat, the seat's overall safety was her chief concern. (*Id.,* ¶ 49.)

Plaintiff has alleged the "who" (Britax), the "what" (representations and omissions regarding safety of the Child Seats and its components); the "where" and "when" (representations were made, among other places, on the Child Seats themselves, on national television spots, online video, digital advertising, social media, Amazon.com, and Britax's website, among other places), and the "why" (the Child Seats have a defective hardware component which makes them prone to failure). Thus, Plaintiff sufficiently alleges her claims for FAL, CLRA, and UCL (fraud theory)[11] under Rule 9(b). *See In re Toyota SUA*, 754 F.Supp.2d at p. 1176–77; s*ee also In re Toy. Hybrid. Braking*, 2011 WL 13160303, at *3 (Rule 9(b) satisfied where Plaintiff alleged a safety defect); *Moore v. Mars Petcare U.S., Inc.,* 966 F.3d 1007, 1019–1020 (9th Cir. 2020).

Relying on *Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir. 2009), Britax argues that Plaintiff has not sufficiently identified which misrepresentations Plaintiff relied upon and found material. (Mot. at 22.) In *Kearns*, the buyers of used cars

---

[11]   Britax's arguments do not address the unfair or unlawful prong of the UCL and thus, the UCL claim cannot be dismissed. *Allen v. Hylands, Inc*., 773 Fed. Appx. 870, 874 (9th Cir. 2019) (the "jury's narrow findings as to deceptive advertising do not resolve [plaintiff's] broader unfair practices theory. Thus, the district court must engage in fact-finding to resolve this claim, and erred in granting judgement to Hyland's without doing so.")

brought a consumer class action against Ford, alleging that Ford falsely represented that it used specially trained technicians to rigorously inspect Ford's "certified pre-owned" vehicle program. *Id.* at 1122-25. The court held that the buyers did not satisfy Rule 9(b) because they failed to allege which misrepresentations they relied upon were material. *Id.* at 1125.

*Kearns* is inapposite, however, because there the buyers did not identify a specific safety defect but instead alleged that the cars were not thoroughly inspected. 567 F.3d at 1124. Here, by contrast, Plaintiff has alleged that the Child Seat she purchased had a concrete safety defect that was integral to its central function. *See, e.g., Nguyen*, 932 F.3d at 819. Moreover, in *Kearns,* the buyers' fraud-based consumer protection claims were grounded solely on affirmative misrepresentations and did **not** address omissions or concealment. As we discuss in Section IV(F)(1)(b), *infra*, that distinction is significant because omissions do not require the same degree of adherence to specificity regarding the "time and place of conduct" as do claims based on affirmative misrepresentations. *See, e.g., Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1098, 1099 (N.D. Cal. 2007).

### a.        Britax's Safety Statements Are Actionable

Britax argues that its alleged misrepresentations constitute non-actionable puffery. (Mot. at 7, 23-24.) But "[w]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008). As the Ninth Circuit observed, dismissal on puffery grounds is a "rare situation." *Id.*; *Davis v. HBSC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012).

"Unlike common-law fraud claims that focus on the victim's reliance or damages, the UCL focuses on the perpetrator's behavior." *Salas v. Toyota Motor Sales, U.S.A., Inc.*, cv-15-8629-FMO, 2019 WL 1940619, at *7 (C.D. Cal. Mar. 27, 2019). "To state a claim under…the UCL…it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal.4th 298, 312

PLAINTIFF'S OPPPOSITION TO DEFENDANT BRITAX'S MOTION TO DISMISS COMPLAINT
Case No. 2:20-cv-07373-MCS-AS

(2009). "Actual falsehood, the perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false statements – each of which are elements of common-law fraud claims – are not required to show a violation of California's UCL." *Salas,* 2019 WL 1940619, at \*7 (citations omitted). A similar analysis applies to the FAL and CLRA. *Williams,* 552 F.3d 934, 939 (9th Cir. 2008).

When evaluating whether alleged statements are false or misleading,  courts cannot view the words in isolation, but must view them in the context of the advertising as a whole. *Williams*, 552 F.3d at 939 fn. 3 (emphasis added) (rejecting defendant's argument that the word "nutritious" was mere puffery given "the deceptive context of the packaging as a whole"); *see also Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1080, 1086 (N.D. Cal. 2017) (holding that the statement "Real Fruit" paired with the statement "Take care of you" cannot be dismissed as puffery). "What might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation." *Beloit Corp. v. Emmett & Chandler Companies, Inc*., 940 F.2d 1533 (9th Cir. 1991)

Further, "[a]dvertisements that make representations about safety are actionable." *Toyota Hybrid Brake*, 890 F.Supp.2d at 1221 (citing *Continental Airlines, Inc. v. McDonnell Douglas Corp*., 216 Cal.App.3d 388, 424 (1989)). In *In re Toyota SUA,* for example, the court found that Toyota's "general promise of safety" combined with its promise that the allegedly defective electronic components were "more reliable" constituted actionable representations. 754 F.Supp.2d 1145, 1171-72.

Here, Plaintiff alleges safety representations that go far beyond mere puffery. The FAC describes marketing claims that pertain to both the Child Seats and the defect issue. (FAC, ¶¶ 28-33.) Britax highlights the technologies implemented in the harness and "high-strength steel frame," which provide enhanced protection and "movement limitation" beyond basic safety standards. (*Id.,* ¶¶ 28-35.) Britax also claims that these technologies provide more robust strength at the connection point.

(*Id.,* ¶ 32.)  Significantly, these are the very components that are prone to failure. (*Id.,* ¶¶ 38-40.) Given that the Child Seats' essential purpose is to restrain children, Britax's claims regarding safety and exclusive safety technology that provide industry-leading protection, (*id.,* ¶¶ 5, 23, 26, 29-30, 35, 41, 43, 45, 47), easily satisfy the foregoing standards for pleading deceptive conduct under the consumer protection statutes.[12]

### b.    Plaintiff's Omissions-Based Theory Satisfies Rule 9(b)

In just a single paragraph of its 25-page Motion, Britax incorrectly argues that Plaintiff's omissions-based theory fails because Plaintiff supposedly has not identified an unreasonable safety hazard. (Mot. at 23:11-20.)

Circumstances in which a duty to disclose arise include when the defendant has exclusive knowledge of material facts not known to the plaintiff or when the defendant actively conceals a material fact. *LiMandri v. Judkins*, 52 Cal. App.4th 326, 337 (1997).  "'[C]ourts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only...limited publicly available information about the defect.'" *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F.Supp. 3d 1115, 1133 (C.D. Cal. 2020) (quoting *Salas*, 2016 WL 7486600, at *10); *see also Falk*, 496 F.Supp.2d at 1097 ("It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers.... But GM is alleged to have known a lot more about the defective speedometer"); *accord, Daniel*

---

[12]    Britax relies on two cases that are distinguishable. In *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003), opinion amended on denial of reh'g, 352 F.3d 367 (9th Cir. 2003), the court found that statements by the seller of film editing equipment to a customer that it placed a "high priority" on product development were overly generalized. In *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) an escrow agent sued a title company for, inter alia, defamation after the title company told a mortgage company that the escrow agent was "'too small'" to handle its business. *Id.* at 731. Neither case involved representations pertaining to product safety.

*v. Ford Motor Co.*, No. 2:11-02890 WBS-EFBx, 2016 WL 2899026, at \*5 (E.D. Cal. May 18, 2016).

"Claims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim.'" *MacDonald v. Ford Motor Co.*, 37 F. Supp.3d 1087, 1096 (N.D. Cal. 2014) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In *MacDonald*, the Ninth Circuit held that a plaintiff sufficiently states a claim based on a fraudulent omission where the manufacturer fails to disclose a safety defect: "the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is **the various channels of information through which Ford sold Class Vehicles**." *Id.* (emphasis added); *In re Toyota SUA* 754 F. Supp. 2d at 1191.

Here, Plaintiff alleges that Britax, as early as 2015, had exclusive or superior knowledge of the defect, "which was not readily apparent" to consumers, (FAC, ¶¶ ¶¶ 1, 4-5, 33, 38, 41-42), and that the defect was not known to Plaintiff or the Class at the time of purchase, (*id.* at ¶¶ 5, 23, 34, 37, 41, 43-45, 49-51, 62-63, 86-89, 101-103, 110, 115, 117, 121, 142-145). Plaintiff and the Class were exposed to Britax's widespread marketing campaign, where it failed to disclose the defect (*Id.*, ¶¶ 48-49).

The alleged defect created "unreasonable safety risks," which, in turn, gives rise to a duty to disclose. No parent would deem immaterial Britax's failure to reveal a safety defect in a product whose sole purpose is to protect children. (FAC, ¶¶ 23, 25, 44-46, 50, 62, 87, 102, 142-145.) Here, as in *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 533 (C.D. Cal. 2012), "all class members received the same information from defendant[] regarding the purported defect – which is to say, no information[.]")[13]

---

[13]   Allegations that a product compromises motor vehicle safety are generally sufficient to establish the existence of a safety defect. *See, e.g., Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015); *Banh v. Am. Honda Motor Co., Inc.,* 2:19-CV-05984-RGK (ASx), 2020 WL 4390371, at \*11 (C.D. Cal. July 28, 2020);

Britax argues that Plaintiff has not alleged an unreasonable safety hazard because their Child Seats comply with FMVSS 213. (Mot. at 24.) But that argument fails because compliance with FMVSS 213 is **not dispositive** of whether a defect exists. *See Williamson,* 562 U.S. 323, 332-36 ("a federal statute giving manufacturers a choice to select a less effective car safety device did not preempt a state tort suit that could require the manufacturer to select a more effective device."]; *In re Volkswagen,* 959 F.3d at 1213; *In re Toyota SUA,* 754 F.Supp.2d at 1195-96; *Collins* 214 Cal.App.4th at 1511-12 (vehicle manufacturer's compliance with FMVSS regarding windshield design did not undermine plaintiff's argument that the windshield shield should have been made of a stronger material); 65 FR 1224-01, 1224-25 (NHTSA encourages child seat manufacturers to exceed FMVSS 213's requirements). That is particularly true at the pleading stage.

Britax's reliance on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) for the proposition that Plaintiff's allegations do not sufficiently identify the safety hazard is also misplaced. *Wilson* is distinguishable because there plaintiffs failed to plead any plausible facts "indicating how the alleged design defect, i.e., the loss of the connection between the power jack and the motherboard, causes the Laptops to burst into flames…." *Id*. at 1145. The Ninth Circuit reasoned, "it is difficult to conceive (and the complaint does not explain) how the Laptops could ignite." *Id*. at 1144. Here, unlike *Wilson*, Plaintiff alleges facts that plausibly, and specifically, connect defect to a safety issue. Plaintiff explains how the defective component affects the function of the Child Seats, leads to failure (i.e., the harness detaching from the frame), and impacts child safety. (FAC, ¶¶ 38-40.)

Nor does *Wilson* suggest that a plaintiff must "quantify the injury risk" at the pleading stage as Britax claims. (Mot. at p. 24.) *Wilson* distinguished the facts of the

---

*Mosqueda*, 443 F.Supp3d at 1126–27 (citing cases); *In re Toyota Hybrid Brake,* 2011 WL 13160303, at *3.

case before it from other cases in which plaintiffs had plausibly alleged a safety defect, including *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08–04876 AHM (JTLx), 2009 WL 8379784 (C.D. Cal. May 4, 2009). *See Wilson,* 668 F.3d at 1145 (citing *Marsikian* at **6–7 ("denying motion to dismiss a CLRA claim where plaintiff alleged that air intake systems were 'susceptible to clogging' and the defect could lead to 'substantial electrical failure' because 'it is not implausible that the [clogging] would cause 'catastrophic engine and electrical system failure' while the car is on the road'")). Significantly, in *Marskinian* (to which *Wilson* cites favorably) the court rejected defendant's argument that the plaintiff failed to allege "specific incidents suggesting that there might be a safety problem," explaining that "[s]uch contentions are better raised on summary judgment." 2009 WL 8379784 at *6.[14]

Contrary to what Britax claims, Plaintiff does not seek to impose a duty on Britax to implement an added, unbargained for safety feature, but merely to disclose a defect that is integral to the central function of the product.

### 2.    Plaintiff Adequately Alleges Breach of Implied Warranty

"To establish a claim for breach of the implied warranty of merchantability, a plaintiff must allege a fundamental defect that renders the product unfit for its ordinary purpose." *Choi*, 2019 WL 4894120, at *11 (citing *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F.Supp.3d 855, 878 (N.D. Cal. 2015)). Britax argues that Plaintiff's implied warranty claim fails because the defect did not

---

[14]    The only case Britax cites for its proposition that plaintiff must allege facts regarding the frequency of harm is district court order, which does not cite any supporting authority on that point. *See Corral v. Carter's Inc.*, 1:13-CV-0262 AWI SKO, 2014 WL 197782, at *4 (E.D. Cal. Jan. 16, 2014). In the over seven years since *Corral* was decided, only a single case has cited to *Corral* but for a different proposition. *Lewis v. Rodan & Fields*, LLC, 18-CV-02248-PJH, 2019 WL 978768, at *2 (N.D. Cal. Feb. 28, 2019) citing *Corral,* 2014 WL 197782, at *5.) Also, *Corral* is distinguishable because the plaintiffs failed to allege any facts connecting the defect to the risk of injury. *Id.* at *2.

manifest during Plaintiff's use, and the Child Seats provide at least a "'minimum level of quality.'" (Mot. at  24, citing *Am. Suzuki*, 37 Cal.App.4th at p. 1296-97.)

However, a California appellate court has held that the implied warranty of merchantability means that the product is "in safe condition and substantially free of defects." *See Isip v. Mercedes-Benz USA, LLC*,  155 Cal.App.4th 19, 27 (2007). Britax breached the implied warranty of merchantability because, as a result of the safety defect, the Child Seats' central function is compromised—namely the ability to safely restrain a child during an accident—thereby rendering it unusable. *Choi*, 2019 WL 4894120, at *11.

### 3. <u>Unjust Enrichment Is an Independent Cause of Action</u>

Britax argues that unjust enrichment is not a stand alone cause of action. (Mot. at 25.) However, "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig*., No. 19-MD-02913-WHO, 2020 WL 6271173, at *57 (N.D. Cal. Oct. 23, 2020).

### G. Leave to Amend

Leave to amend should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "New" facts in the plaintiff's opposition papers should be considered by the court in deciding whether to grant leave to amend. *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137 (9th Cir. 2001). Because Plaintiff could allege additional facts to cure any potential pleading deficiency, she alternatively requests leave to amend.

For example, Britax challenges Plaintiff's defect allegations because they do not identify instances in which any physical injury to a child has occurred. Although such allegations are **not required**, Britax learned, in early 2020, of the death of a child who was "restrained" in a Frontier model seat during a frontal crash. Britax, whose

engineers inspected the seat in the fall of 2020, learned that the child died as a result of the same failure mechanism documented in the testing that Britax received in 2015 and in the 2019 Consumer Reports article.

## V.   CONCLUSION

For the reasons set forth herein, the Complaint's allegations are sufficient, and the Motion should be denied. Should this Court be inclined grant the Motion, Plaintiff requests the opportunity to amend the Complaint.

DATED: February 19, 2021          NELSON & FRAENKEL LLP
                                  Gretchen M. Nelson
                                  Gabriel S. Barenfeld


                                  By:  /s/ Gabriel S. Barenfeld
                                       Gabriel S. Barenfeld

                                       GREENE, BROILET & WHEELER LLP
                                       Christine D. Spagnoli

                                       LEVIN, PAPANTONIO, THOMAS,
                                       MITCHELL, RAFFERTY &
                                       PROCTOR, P.A.
                                       Troy A. Rafferty (PHV)
                                       trafferty@levinlaw.com
                                       316 S. Baylen St., Suite 600
                                       Pensacola, FL 32502
                                       Tel: (850) 435-7140
                                       Fax: (850) 436-6140

                                       *Attorneys for Plaintiff Margaret Stevens and the Proposed Class*